Bohrer v. The Dienhart Harness Company.

## BOHRER v. THE DIENHART. HARNESS COMPANY.

[No. 1,761.   Filed Jan. 11, 1898.   Rehearing denied March 10, 1898.]

ADJOINING LANDOWNERS.—*Lateral Support.—Excavations.— Damages.*—The owner of land in its natural state without any structure or artificial weight thereon has the right to the support which it has from adjoining land, and may recover for the violation of such right, without regard to the question of negligence on the part of the person who violates such right by the removal of such support; but where the land is not in its natural condition but has a building thereon, the right of support, without regard to negligence, does not extend to the increased weight caused by the building, and for the removal of the support, without negligence, there can be no recovery for any loss greater than would have resulted if the land had not been burdened by such artificial weight." *p. 498.*

SAME.—*Lateral Support.—Excavations.—Damages.—Notice.*—Where one makes excavations upon his own land and thereby endangers the support of a building upon the adjoining land of another, the former by giving notice to the latter may relieve himself of the necessity of using extraordinary care to protect the building; but, in making such excavation, ordinary care must be exercised to avoid such danger, and the person making it will be responsible for the consequences of negligence therein of himself or servants. *pp. 498, 499.*

Bohrer *v.* The Dienhart Harness Company.

ADJOINING LANDOWNERS.—*Lateral Support.—Excavations.—Braces.*
—It is not incumbent upon one making excavations with ordinary
care on his own land to shore up the foundation wall of the build-
ing of an adjoining landowner having notice of such excavation.
*p. 499.*

SAME.—*Lateral Support.—Excavations.—Damage to Adjoining Build-
ings.—Proximate Cause.*—Where a landowner made an excavation
on his land for a cellar and removed the earth supporting the wall
of a building adjoining, and after the removal of such earth the
wall stood uninjured for several hours, and until a large amount of
water flowed into such excavation from the street, the removal of
the earth was a mere condition, and the flow of the water into the
excavation was the proximate cause of the fall of the wall. *pp.
499, 500.*

PROXIMATE CAUSE.—*Knowledge of Result.*—To render a person liable
for the proximate and natural results of his wrong it is not neces-
sary that the particular damage which accrued should have been
actually foreseen or expected. *p. 500.*

ADJOINING LANDOWNERS. — *Excavations.*— Where a landowner in
making an excavation for a building on his own land removed the
earth from the wall of a building adjoining, and in making such ex-
cavation and removing the earth therefrom with teams sloped the
same up to the street and allowed bricks from an old building which
had been removed to the street and gutter to remain therein, thereby
causing the water from a heavy rain to flow from the street into
the excavation in large quantities, such landowner is liable for
damages caused to the wall by such water, notwithstanding the
bricks were removed by a contractor and ordered by the owner to
be placed in the street, though not ordered to be placed in the gut-
ter, where such contract for removing the bricks to the street had
been completed, and the bricks were in the possession of the land-
owner for more than a month before the accident. *pp. 499-502.*

From the Tippecanoe Superior Court. *Affirmed.*

*Stuart Brothers & Hammond* and *Edwin P. Ham-
mond, Jr.,* for appellant.

*Kumler & Gaylord* and *John F. McHugh,* for ap-
pellee.

BLACK, J.—The appellee recovered judgment against
the appellant. The questions presented on appeal
were raised by the appellant's exception to the court's
conclusions of law upon the facts stated in a special
finding. The south part of a certain lot in the city

of Lafayette was owned by one James D. Marshall. There was on said south part a three-story brick building, which was occupied and used, under a lease from said Marshall, as a storehouse and place of business, by the appellee, a corporation engaged in manufacturing and jobbing harness and saddlery, and it had in said building goods of the value of $5,000.00. The appellant owned all the remaining and north part of said lot. The lot was at the southeast corner of Third and Ferry streets, the former running north and south, the latter east and west. Said building fronted on Third street and extended back sixty feet, its north wall of brick, with stone foundation, extending along the north line of the part of said lot owned by Marshall, and immediately adjacent to the south line of the part owned by the appellant. The north line of the lot extended seventy feet along Ferry street. There was an old brick building on the part of the lot owned by the appellant, its south wall being about seven feet from the dividing line. The appellant, desiring to remove said old building and erect a new brick building covering all of his portion of said lot, with a basement or cellar, applied for, and upon giving bond as required by a city ordinance obtained, from said city, on the 11th of February, 1892, a proper building permit, good from that date until August 11, 1892, whereby he was permitted to use one half the width of Third and Ferry streets, immediately fronting the property which it was proposed to improve, for depositing building materials thereon, commencing at the outer edge of the adjacent sidewalk, it being expressly stipulated therein that nothing contained in the permit should be construed as permitting the obstruction of any street, alley or gutter so as to prevent the free passage of persons, vehicles or water upon or along the same. About the 1st of

April, 1892, the appellant contracted with the firm of Green & Demerly, brick and stone masons, for the tearing down of said old building and for the erection of said proposed building as to brick and masonry, the contract providing that said firm, after using such of the bricks in the old building as were suitable for the purpose, were to furnish the other bricks for the proposed building and the stone for its foundation, and were to do the work, including tearing down and cleaning the bricks, for $1,095.75. Green & Demerly, taking said contract by the job, were to employ and pay their own laborers and were to receive from the appellant said sum for said work and new materials. In a few days after the making of this contract, it was mutually agreed between said firm of Green & Demerly, the appellant and one Henry Martin, that Martin should have the job of tearing down the old building, cleaning the bricks and removing the useless rubbish, and that for this work he should receive from the appellant $130.00, which sum should be deducted from the the amount which it had theretofore been agreed was to be paid to Green & Demerly; that Martin should have charge of the tearing down of the old building and cleaning the bricks for the appellant; and that he should employ and pay such assistants as he might require in doing this work. In pursuance of this contract Martin tore down the old building, cleaned off such of the bricks as were suitable to be placed in appellant's new building, and hauled away the worthless materials and rubbish, completing the job about the latter part of May, 1892. He was paid in full therefor by the appellant said sum of $130.00 at or soon after the completion of the job. In the execution of this contract Martin employed and paid the men assisting him, and the appellant exercised no control over

Martin or his employes in directing how the work should be done, except that the appellant did direct Martin to place and pile such of the bricks as were to be used in the proposed building on Ferry street, immediately north of appellant's part of said lot, but he did not direct Martin to pile or place any of the bricks in the gutter of said street. Martin, in executing this contract placed and piled the bricks on the south side of Ferry street, from near the center of the street, where the pile was about eight feet high, and reaching south in and over the south gutter of the street to the curbstone, where the pile was about two feet high, the pile from east to west being about thirty feet long. The bricks remained so piled until long after the 23d of June, 1892.

Between one and two weeks after the completion by Martin of his contract as to the old brick house and the payment to him by the appellant of $130.00 therefor, Martin and the appellant entered into a contract whereby Martin was to do the excavating and removing of the earth for the basement or cellar of the proposed new building; said contract being made upon the acceptance by the appellant of a written proposition from Martin dated June 8, 1892, whereby he proposed to excavate the cellar seventy feet long and forty feet wide and six and one-half feet deep for $105.00, all dirt to be hauled away. Upon the acceptance of Martin's proposition, he commenced the execution of the contract, employing and paying his workmen without directions from the appellant. He hauled the soil from the cellar with wagons and teams, and in so doing he formed a wagon way from the cellar at its northeast corner, leading therefrom across the sidewalk and gutter on the south side of Ferry street. This wagon way crossed the gutter immediately east of the old bricks so placed on said

street and in the gutter thereof.   Ferry street had a descending grade from east to west of eighteen inches in the one hundred feet, and at times of rain the surface water from some three or four blocks east and south passed and flowed off through said gutter.   The curbstone between the gutter and the sidewalk was ten inches high from the bottom of the gutter.   The old bricks so placed and piled and remaining in the gutter would and did obstruct and prevent the passage of water coming from the east therein.   Martin did not remove the curbing, but he placed boards and trash in the gutter so as to facilitate the passage of his wagons in removing the earth.   As the excavation proceeded, the wagon way became more and more inclined so as to reach the bottom of the progressing cellar.   On the 23d of June, 1892, in the afternoon, Martin had removed most of the earth from the excavation.   On the south side, up to the foundation wall of the building on Marshall's part of the lot, the earth was removed for most of the way down to, and even with, the bottom of said foundation, but for the space of some fifteen feet on the west end of said foundation wall and for the space of some twenty feet on the east end thereof, the excavation had not been carried down to the bottom of the wall by some one to two and one-half feet, there being less depth of excavation near the corner of the cellar and where the wagon way led out of it.   For the length of three or four feet near the middle of the wall, the excavation had been carried down from two to four inches below the level of the bottom of the wall.   The earth toward the bottom of the excavation, and under said wall was composed of a fine gravel, and when the excavation was so carried below the foundation, fine gravel dropped or rolled out from beneath the wall for two or three inches back from its north side.

The wall was twenty-one to twenty-two inches thick and six feet six inches deep, composed of rock laid in mortar. Many of the stones were small and of irregular and improper shape to make a strong and durable wall, especially so as to those stones in the north side of the wall, abutting on appellant's soil. There were no bond stones, or, if any, very few, reaching through the entire thickness of the wall. Some of the stones on the north side were laid edgewise, so as to be of little help in giving strength to the wall, which had been built about twenty-five years, and the mortar, if ever good, had lost, by reason of age and dampness, most of its cohesive strength, so that it served but little purpose in supporting and giving strength to the wall.

The situation and condition of the bricks in the street and gutter and the excavation and wall were plainly observable and known to both the appellant and the appellee, through its president and secretary. The appellant, from the time of commencing to tear down his old brick building up to and including the 23d of June, 1892, visited the work two or three times a week, for a short time, to see how the work was progressing, and the president and the secretary of the appellee were present daily in the prosecution of appellee's business in the Marshall building, and they had full control and management of appellee's business.

Toward the close of the afternoon on the 23d of June, 1892, there were indications of a heavy storm of wind or rain or both, and Martin and his employes, to avoid the threatened storm, quit their work of excavation about half past five o'clock, when it had commenced to sprinkle. Soon afterward there was a heavy wind from the northwest, and soon thereafter a heavy shower of rain accompanied with a strong

wind.   Said fall of rain caused the water to gather
and flow west in said south gutter of Ferry street in
considerable volume.   By reason of said obstruction
of said gutter by said old bricks, said water was
forced over the curbstone (said curbstone being
lower than the center of the street), and ran down and
along said inclined wagon way into and upon said
excavation, and thence over and against said founda-
tion wall and the earth supporting it, and thereby
caused said foundation wall to become still weaker,
and caused the earth under and adjacent thereto to
become loosened and to still further give way and
settle at the place under the wall where the excava-
tion had gone deeper than the bottom thereof, and
thus caused the wall to give way at that point, and
thus caused the entire foundation wall and the brick
wall of said building thereon to fall, carrying down
the floors and roof of the building and casting the
stones, bricks and mortar, together with many of the
appellee's goods, into the cellar of said Marshall
building and said excavation, thereby destroying and
damaging the stock of goods owned by the appellee
in said building, to its damage in the sum of $1,675.51.

It was found that the foundation wall, with the
lateral support of the appellant's soil, before it was so
removed, was reasonably safe and durable, and suf-
ficient to support the brick wall of the Marshall build-
ing, but that without such lateral support, and with
appellant's said soil removed, said wall was insuf-
ficient and liable to fall from any slight cause that
might reasonably be expected to occur at any time;
that said wall did maintain itself intact for some two
or three hours after the removal of appellant's soil;
that neither the appellee, the appellant nor Marshall,
before the excavation and removal of the soil had any
knowledge of the formation and character of the

foundation wall, and neither of them had any notice, expectation or fear that said wall and building were liable to fall on account of the excavation and the character and condition of the wall, except that some bystander on the sidewalk had remarked, in the presence of appellee's president, that there was danger that the wall would give way and fall, but said remark made no impression on said president, and he had no apprehension of what did occur.  Said Marshall was not a resident of this State, but resided in the city of Chicago, and had not been in the city of Lafayette for several years.  The building was in the possession of his tenant, the appellee, and he knew nothing of the proposed building or said excavation, or of the falling of his building, until after the 23d of June, 1892.  The court found that the immediate cause of the giving way and collapse of the foundation wall and said building and said damage was the flowing in of the water from the obstructed gutter, down and along the wagon way into the excavation and against the  wall and the earth  thereunder, as above stated; that at the time of the fall of the building it had been raining very hard for about one-half an hour; that the rain was preceded and accompanied with a very heavy wind, blowing from the northwest; that the rain and wind continued for a short time after the fall of the building, and the water from all of said rain thus flowing into the excavation from the obstructed gutter, flooded the excavation and also the cellar under the Marshall building to the depth of from ten to  twelve inches above the  bottom of the foundation wall; that had said wall been well constructed and of the strength of foundation walls usually placed to support the kind of building erected thereon, the water would not have affected or injured

it so as to cause it so to give way and fall.    Martin when employed to do each of said jobs was a competent and experienced workman in such work, and Green & Demerly and Martin were, and for many years had been  residents of said city of  Lafayette. In making said excavation, Martin and his employes were careful, in that they did not remove or strike or disturb any of the stones in said foundation wall, and did not dig under it at any place.   The president and secretary of the appellee knew, from the time that appellant  commenced tearing  down the old  brick building, that he was going to erect a new building covering all of his part of the lot, with a cellar thereunder, and they were present from day to day and saw how the work was being done and how the gutter was being obstructed, and they made no objection thereto.

The owner of land has the absolute legal right that it, in its natural condition without any structure or artificial weight thereon, shall not be deprived of the support which it in such natural condition has from adjoining land; and he may recover for the violation of such right, without regard to the presence or absence of  negligence on the  part of the person  who violates the right by the  removal of  such support. Where the land is not in its natural condition, but has a building thereon, as in the case before us, the right of support without regard to negligence does not extend to the increased weight caused by the building, and for the removal of the support without negligence there can be no recovery for any loss greater than would have resulted if the land had not been burdened with the superincumbent artificial weight.

Where one, in making improvements on his own land, excavates it and thereby endangers the support of a building upon the adjoining land of another, the

former, by giving notice to the latter, may relieve himself of the necessity of using extraordinary efforts to protect the building; but in making such excavation ordinary care must be exercised to avoid such danger, and the person making it will be responsible for the consequences of negligence therein of himself or his servants.   This subject has been discussed satisfactorily, and, for the purposes of this case, sufficiently, in *Block* v. *Hazeltine*, 3 Ind. App. 491, and *Moellering* v. *Evans*, 121 Ind. 195. The appellee having had knowledge from the beginning of the intention and proceedings of the appellant, the latter was not bound to use any extraordinary precautionary measures in making the excavation.

As to any injury that might occur to the appellee from the making of the excavation in an ordinarily careful way, it devolved upon it to take needed precautions.   It was not incumbent on the person making the excavation with ordinary care to shore up the foundation wall; but if such act of protection was needed under the circumstances, it belonged to the appellee by way of self protection.   *Block* v. *Hazeltine, supra.*

It does not appear that the excavation was not made with ordinary care, or that the building fell because of negligence in the making of the excavation. On the contrary, it appears that the excavation was made with ordinary care, and that the building fell from other cause, and not as a proximate result of the mere making of the excavation, or of the manner in which it was made.   The injury, therefore, did not occur because of the failure of the appellee to take prudent measures against the result of the lawful work of excavating the cellar with ordinary care.   It was not under obligations to anticipate injury from negligence or to guard against it.   After the work on

the excavation ceased, the wall still stood uninjured, and, so far as the making of the excavation is concerned, it would be the expression of a mere conjecture to say that it would have caused the fall of the wall; and, at all events, it was a mere condition, and not the cause of the injury. The cause, as found by the court, was the flow of water into the excavation, and the excavation and the wall were in such a condition, without the fault of any one, that the ingress of water in large quantity would and did cause the fall of the wall as a natural result. The great access of water was caused by the wrongful stoppage of the gutter, and whoever was responsible for that stoppage was liable for the injury to the appellee. To render him so liable for the proximate and natural result of his wrong, it was not necessary that the particular damage which so accrued should have been actually foreseen or expected. If he had been fully acquainted with all the circumstances which actually did exist at the time, as a man of ordinary prudence and experience he must have thought it reasonably possible that such consequences would follow from his negligent act, if they had been suggested to his mind. In such a case he must answer for such consequences. See *Railway Co.* v. *Wood*, 113 Ind. 544; *Clore* v. *McIntire*, 120 Ind. 262; *Machine Co.* v. *Richter*, 2 Ind. App. 331; Shear. & R. Neg., section 29.

It is claimed on behalf of the appellant that the appellee ought not to recover, because all the work was done by independent contractors, and considerable space is given in the briefs to a discussion of the law relative to injuries caused by the faults of independent contractors; but we are unable to find place in the facts for the application of such principles of law.

The appellant, in February, obtained a permit from

the city, which was in force at the time of the injury, and which expressly excepted the right to obstruct the flow of water. About the 1st of April, he let the contract to Green & Demerly. The exclusive possession or control of the premises was not turned over to that firm. Green & Demerly were not to do all the work. At first, the contract provided that they should tear down the old brick building and clean the bricks, and should do the brick and stone masonry, using the old bricks and furnishing the other bricks and the stone. They were to receive a certain sum for "said work and new material." Shortly after the making of this contract it was modified, the work of tearing down of the old building and the cleaning of the bricks being given up by Green & Demerly, and turned over to Martin, and a certain deduction was made in the agreed compensation of Green & Demerly, being the amount given by the appellant to Martin for his work. Thus the work to be done by Green & Demerly was restricted to the stone and brick masonry, which would not commence until after the excavation of the cellar, and it does not appear that at the time of the injury Green & Demerly were in possession or control of the premises, or that they had ever had possession or control, or that they had commenced to do anything under their contract.

Martin and his laborers did the work of tearing down the old building and cleaning the bricks without directions, but the appellant gave directions for the piling of the bricks in the street, though he did not direct Martin to pile them in the gutter. But Martin completed this work and received his pay in full for it, and there does not appear to have then existed any contractual relation between him and the appellant until between a week and two weeks after-

ward, when they entered into a new and entirely distinct contract for the excavation of the cellar. Martin's possession and control of the bricks in the gutter had then ceased, and he had possession and control of the premises for the excavation of the cellar, and Green & Demerly had not yet taken possession or control of the bricks or of the premises. The bricks in the gutter were owned by the appellant, and were in his possession and control. He left them where Martin had placed them. The appellant was responsible for their remaining in the gutter while the cellar was being excavated. So, if it is true that Martin did not cause the injury by negligence in the excavating of the cellar, but the proximate cause was the obstruction of the flow of water in the gutter whereby it overflowed into the cellar, then the appellant, being at the time of the injury in possession and control of his own bricks in the gutter, was responsible for the injurious result, and there is no occasion for the application of the principles of law discussed relative to independent contractors. The judgment is affirmed.

### Dissenting Opinion.

HENLEY, J.—I cannot concur in the conclusion reached by the majority of the court in this cause. It is contended by appellant that all the work complained of was done by independent contractors, who were men skillful and competent for the work, who employed and paid their own laborers and attended to all the details of the work, without any supervision upon the part of appellant. The other questions presented by this appeal are ably discussed by counsel, but as the special finding upon this point, in my opinion, precludes any recovery upon the part of the appellee in this action, I do not deem it necessary to discuss them.

Bohrer v. The Dienhart Harness Company.

The questions then arise:   (1) Does the law of this State excuse an employer from the consequences of a wrongful act of an independent contractor?   (2) Does the special finding show that the parties employed to do the work were independent contractors? (3) Was the appellee's injury the result of the act of the employer or of the independent contractor?

In the case of *New Albany Forge and Rolling Mill* v. *Cooper*, 131 Ind. 363, the Supreme Court of this State by Coffey, J., said:   "It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let."

And in the case of *Wabash, etc., R. W. Co.* v. *Farver*, 111 Ind. 195, 60 Am. Rep. 696, it was said: "If, in rendering the service, the person whose negligence caused the injury was in the course of accomplishing a given end for his employer, by means and methods over which the latter had no control, but which were subject to the exclusive control of the person employed, then such person was exercising an independent employment, and the employer is not liable."

In the case of the *Vincennes Water Supply Co.* v. *White*, 124 Ind. 376, the court said: "It seems to be settled law that where one person lets a contract to another to do a particular work, reserving to himself no control over the manner in which the work shall be performed, except that it shall conform to a particular standard when completed, he is not liable for any injury which may occur to others by reason of any negligence of the person to whom the contract is let."   Also, see *Ryan* v. *Curran*, 64 Ind. 345, 31 Am. Rep. 123; *Zimmerman* v. *Baur*, 11 Ind. App. 607.   The case of *Blake* v. *Ferris*, 5 N. Y. 48, 55 Am. Dec. 304, is

cited as stating the law by the Supreme Court of this State. The last mentioned case is an elaborate and well-considered opinion as to the liability of an employer for the negligent act of an independent contractor and in the course of the opinion the court makes use of the following language: "The impracticability and injustice of the construction of the rule of *respondeat superior*, contended for by the plaintiff below, may be further illustrated by the supposition of a very common case in this country,—that of a man, who is about to build a home for himself. He may, if he pleases, superintend and manage the whole from its commencement to its completion, employ men, give directions in respect to every part of the work, which his men would be bound to follow, and thus make himself the master in fact of all the persons employed; but as Baron Park said about the butcher's driving the ox, he is not bound to do so, and he may not know how to do it. He may, therefore, let out by contract, the building of the house to some person who will undertake to furnish all the materials and complete the building in a specified manner, and for a stipulated compensation. Would he thereby become the master of all the contractor's appurtenances, servants and men employed by him, and render himself liable for all the injuries to third persons, which might be occasioned by their negligence or misconduct in doing any act tending to the construction of the house? * * * The truth is, such a contract does not constitute the contractor the agent or servant of the employer, nor authorize him to pledge the responsibility of the employer for the conduct of servants, nor for anything to be done in the execution of his contract."

Another New York case upon this point, cited with approval by the Supreme Court of this State is the

case of *Town of Pierrepont* v. *Loveless,* 72 N. Y. 211, in which case the judge who wrote the opinion has collected a large number of authorities upon the subject. Also, see *Dehority* v. *Whitcomb,* 13 Ind. App. 558; *Sessengut* v. *Posey,* 67 Ind. 408, 33 Am. Rep. 98; *City of Logansport* v. *Dick,* 70 Ind. 65, 36 Am. Rep. 166; *Cameron* v. *Oberlin, ante,* 142; Thompson on Neg., vol. 2, p. 899.

We then come to the second question: *Does the special finding show that the parties employed to do the work were independent contractors?*

As will be seen by the special finding, appellant in the year 1892, began tearing down his old building for the purpose of erecting a new one on the same ground, and on the 11th day of February, 1892, he obtained from the city a proper building permit, whereby, as will be seen by the permit which is made a part of the special finding, he was permitted by said city of Lafayette, during the time said permit was in force, to use one-half of the width of Third and Ferry streets, immediately fronting his said property, for depositing building material, commencing at the outer edge of the adjacent sidewalk. Some time in April, 1892, the appellant contracted with Green & Demerly, who were skillful and competent brick and stone masons, to tear down his old building and do the brick and stone work for his new building; they were to clean and use such old bricks, as were suitable, in the new building, and were to do all said work including the work on the new building at an agreed price. Afterwards by agreement between Green & Demerly, the appellant and one Henry Martin it was agreed that appellant might deduct $130.00 from the amount to be paid the firm of Green & Demerly and pay it to said Henry Martin who should have charge of tear-

ing down the old building and cleaning the bricks thereof, and that said Martin was to employ and pay all such assistants as he might require in doing said work; that Martin was a competent and experienced workman in the line in which he was engaged, and that the appellant exercised no control over said Martin or his employes in directing how said work should be done, except that said appellant did direct said Martin to pile such bricks as were to be used in the new building in the street, as he had a perfect right to do under the permit from the city, but he did not direct or order said Martin to pile any of said bricks in the gutter of said street.

The mere act of piling the building material in the street was a lawful and duly authorized act, and appellant had a perfect right to show the contractors upon what street they would be permitted to put the material. The finding does not show that the contract with Miller to remove the old material and deposit it in the street, was an unlawful act, or required in its discharge or the discharge of any part thereof, the commission of a nuisance. A lawful act may be done in such a manner as to make it wrongful. It thus follows that the work contracted for may be in every respect lawful and yet the contractor may have proceeded in such a manner and under such circumstances as to make it wrongful, but he cannot by so doing make his employer liable.

Under the special finding in this cause, when, if ever, did Martin become the servant of appellant so that appellant became liable for his, Martin's, negligent act? If Martin was the servant of any one, he was the servant of Green & Demerly, because they, by their contract with appellant were to tear down and remove the old building and to furnish the material, and to do the brick and stone work of the new

building, and as a part of the consideration for the said work were to receive the old bricks which were suitable to go into the new building. These old bricks to be used in the new building were the bricks which were piled in the street by Martin. The only connection that appellant had with Martin, either directly or remotely, was that, by reason of an agreement with Green & Demerly, appellant paid to Martin a certain part of the money appellant had agreed to pay Green & Demerly, because Martin performed a part of the Green & Demerly contract.

Under the contract of appellant with Green & Demerly, the old bricks which were suitable for the new building entered into the consideration of their contract and at once became the property of Green & Demerly. These were the bricks which were piled by Martin in the street. Appellant had procured the right from the proper authorities to use certain parts of the street for the purpose of depositing building material thereon. No one but appellant could procure the permit. When the contractor inquired of appellant where he should deposit the building material,—and the suitable old bricks can be regarded in no other light than as building material,—appellant certainly had a perfect right to inform the contractor upon which streets his permit from the city would allow the building material to be placed. The special finding also clearly shows that there was ample room on the streets where the license was granted appellant, for the contractors to have placed many times the amount of bricks which were placed there without in any wise interfering with the flow of the water or obstructing the gutter. Shall appellant then be held liable because, in the execution of a work in every respect lawful the contractor proceeded in such a manner as to make it wrongful? We think

not.   If the piling of the bricks which were to be used in the new building, in the street, was the proximate cause of the injury, then appellant is not liable. Neither is appellant liable if the proximate cause of the injury was the digging below the foundation of the adjoining building which fell, because both acts were the acts of an independent contractor, pursuing a lawful work, the natural consequences of the doing of which did not produce appellee's injury.

From a most careful examination of all the facts, so fully set out by the special finding in this cause, it seems to me that the conclusion is irresistible, that the direct and the proximate cause of the fall of the Marshall building was the removal of the lateral support of appellant's soil from the foundation of the said Marshall building.   If this be true, then appellant is in no wise liable for appellee's damages, the special finding showing that the removal of the lateral support of appellant's soil having been done in a careful and painstaking manner, and so as not to interfere with said foundation, and that appellant had no reason to believe that such removal would endanger the Marshall building.   That appellee was injured cannot be denied, but it is not to every injured person that a remedy is provided by law; neither should appellant be held liable for the negligent act of another.

I am firmly convinced that this cause ought to be reversed, with instructions to the lower court to restate its conclusions of law upon the special finding of facts and render judgment in favor of appellant.

### DISSENTING OPINION.

WILEY, J.—I fully concur with Henley, J., in the conclusion reached in his dissenting opinion.   He has discussed, however, but three questions:   (1)

Bohrer *v.* The Dienhart Harness Company.

Does the law excuse an employer from the conse-
quences of a wrongful act of an independent con-
tractor?   (2)   Do the special findings show that the
parties employed to do the work were independent
contractors?   And, (3) was appellee's injury the re-
sult of the act of the employer, or of the independent
contractor?   In the dissenting opinion of my associ-
ate, each of these inquiries are resolved adversely to
appellee, and in my judgment, they are so strongly
entrenched by the authorities, and sound legal prin-
ciples, and are so clearly and forcibly expressed, that
there is no escape from the conclusion reached.   Upon
the questions therefore discussed by him, it is wholly
unnecessary for me to add anything, except what may
incidentally be said in discussing other questions, for
upon that question alone, the judgment, in my opin-
ion, ought to be reversed. .

But it seems to me that there are other questions
presented in the record, which also preclude appel-
lee's recovery.   In the opinion of the majority of the
court, these questions have not been given the con-
sideration, it seems to me, that their importance de-
mands, the learned judge who wrote the opinion be-
ing content to affirm the judgment, basing his con-
clusion upon the questions discussed by him.

While appellate tribunals are not required to take
up, discuss, and decide, *cercatim*, every question pre-
sented by the record, yet it is but fair at least, to
litigants, to decide all pivitol questions upon which
their legal rights depend, and which are fairly and
honestly presented by the record.

Appellee prosecuted this action for the recovery of
damages, for the alleged negligent act or acts of the
appellant.   It was therefore necessary for it to aver
in its complaint, and prove upon trial, not only acts of
actionable negligence on the part of the appellant,

but also that the injury complained of was without the fault or negligence of the appellee. This is an elementary rule both of pleading and practice.

A special finding of facts as made by the court serves the same purpose in the trial of a cause as a special verdict returned by a jury. In the latter case, the rule is invariable, in this State, that the special verdict must find and state all the facts essential to the recovery of the party having the burden of proof, and if it fails to do so, the verdict is ill, and will not support a judgment.

In support of so familiar a rule, I do not deem it necessary to collect and cite the authorities, but content myself in citing two cases recently decided by this court, in which many of the authorities pertinent to the question now under consideration are collected, viz: *Louisville, etc., R. W. Co.* v. *Carmon* (Ind. App.), 48 N. E. 1047; *Wabash R. R. Co.* v. *Miller,* 18 Ind. App. 549. It being a prerequisite to appellee's right of recovery that it must both aver and prove its freedom from fault, it logically and legally follows that the special findings must state and show facts from which the court can adjudge, as a matter of law, whether or not he was free from fault.

From the ninth specification of the special finding I quote the following: "That the situation and condition of the bricks in the street and gutter and excavation and Marshall's wall were plainly observable and known both to defendant and plaintiff through its president and secretary; that said defendant, from the time of the commencement to tear down his said old brick building, up to and including the 23rd day of June, 1892, visited said work two or three times each week, for a short time, to see how the work was progressing, and that Matthias Dienhart and Frank X. Dienhart, president and secretary of plaintiff were

present daily in the prosecution of plaintiff's business in said Marshall building, and that said president and secretary had the full control and management of said plaintiff." In finding ten the court stated the manner in which the Marshall building fell, detailed the specific damages plaintiff sustained, and then concluded with the following: "And that said damage so caused occurred without any fault or negligence on the part of said plaintiff." From finding thirteen, I quote the following: "That both the president and secretary of said company had full management of the business of the company, and knew from the time that said defendant Bohrer commenced the tearing down of his old brick building that he was going to erect a new building covering all of his part of said lot 68, with a cellar thereunder, and that said president and secretary were present from day to day, and saw how the work was being done, and how the said gutter was being obstructed, and made no objection thereto." The only finding of fact, as to appellee's freedom from fault, is that above quoted from finding number ten, in which the court finds and states as a fact that the damage sustained by appellee was without its fault or negligence.

It has been repeatedly held that a finding in a special verdict, that a damage sustained by the plaintiff, was without his fault or negligence, was not the statement of a fact, but a conclusion of law. *Wabash R. R. Co.* v. *Miller, supra; Louisville, R. W. Co.* v. *Carmon, supra,* and authorities there cited. It is the duty of the jury, in returning a special verdict, to state all the facts disclosed by the evidence, as to the negligence or non-negligence of the plaintiff, and, upon such facts, it is the duty of the court to apply the law, and declare, as a matter of law, whether the plaintiff was or was not free from fault or negligence on his part.

As the special findings made by the court subserve the same office as the special verdict of the jury, it logically follows that, to entitle the party having the burden of proof, to a judgment upon the special findings, such findings must state every fact essential to his recovery. In case of a failure so to find and state every such essential fact, the finding will not support a judgment. There is not a fact found in the special finding before us which I have been able to discover, after the most diligent search, from which the court can say, as a matter of law, that appellee was free from fault; while, on the contrary, facts are found which clearly show it was not without fault, and from which the court could and should declare, as a question of law, that it was guilty of negligence. The finding that appellee was without fault or negligence, besides being objectionable as a conclusion of law, cannot prevail against the findings which expressly show such negligence.

Appellee was a tenant of one Marshall, occupying the building which fell and caused the injury. Marshall was a nonresident. Appellee, by its president and secretary who had charge of and managed its business, was present at said building daily, from the time the contractors began to tear down appellant's old building to the time the building it occupied fell. They had equal if not greater opportunities to observe everything that was done in and about tearing down the old brick building, piling the bricks in the street, and excavating the cellar for the new building, than appellant. They stood by, saw all that was done, made no objections, but tacitly acquiesced therein. They did not make any efforts to ascertain the condition of the foundation wall, which gave support to the building they were occupying, as the earth and soil were being removed from appellant's lot. They knew, as

appellant knew, that it was such earth and soil that gave lateral support to such wall. They knew, or were bound to know, that if such foundation wall was insecurely constructed, or had become weakened by age, or that the material with which it was constructed had become rotten or impaired by the natural results of the elements, the removal of such lateral support would necessarily impair and weaken it, and might cause it to fall. Yet notwithstanding this knowledge, so far as is shown by the findings, they did not even take the precaution to examine or have it examined, and made no efforts whatever to protect themselves from the impending danger. Neither did they notify their landlord. Here Marshall owned the south half and appellant the north half of lot 68. On the south half a building had been erected some twenty years before the date of the injury complained of. The south foundation wall of such building, as I gather from the findings, was all on that part of the lot owned by Marshall, but flush up to the dividing line between the south and north halves, so that in the excavation of appellee's cellar, he did not trench upon any portion of the lot owned by Marshall. It seems to me that no one can deny appellant's right to remove the soil from his part of the lot, and thus take from such foundation wall its lateral support. The right of lateral and subjacent support exists *ex jure naturae*, as an incident to the soil alone. There is no natural right for such support when any structure or extra burden is placed upon the soil, and, if any such right exists, it must be acquired by grant, express or implied, by prescription, or in some manner known to the law. When thus acquired it is an easement. 12 Am. and Eng. Ency., p. 935; *Stevenson* v. *Wallace*, 27 Gratt (Va.) 77.

While this right to lateral support of land in its natural state is absolute, and the liability of any one who deprives the land of material support is unqualified, yet, in the case of structures which have not acquired the right of support in some manner known to the law, a person who is about to endanger the support of adjoining property is under a duty or obligation to give the owner thereof due notice of his intention, and in the prosecution of his work he must use due care and skill. 12 Am. and Eng. Ency., 937. The English rule, as declared in many cases, is that a party who is about to endanger the building of his neighbor by a reasonable improvement on his own land is bound to give the owner of the adjacent lot due notice of the intended improvement, and to use ordinary skill in conducting the same and that it is the duty of the latter to shore or prop up his own building, so as to render it secure in the meantime. *Peyton* v. *Mayor of London,* 9 Barn. & Cress 725, 4 Man. & R. 625; *Walters* v. *Pfeil,* 1 Moody & Malk. 362; *Massey* v. *Goyder,* 4 Carr & Payne 161, 25 Am. Dec. 524.

As to appellee's duty to shore or prop up the building, or notify its landlord to do so, so as to protect it from danger, resulting from the excavation made by appellant, there can be no doubt, in the light of the adjudicated cases, both in England and the United States. I have cited some English cases, so holding, and subjoin the following: *Block* v. *Haseltine,* 3 Ind. App. 491, 496; *Charless* v. *Rankin,* 22 Mo. 566, 66 Am. Dec. 642, and note, pp. 648-651; *Panton* v. *Holland,* 17 Johns. 92, 8 Am. Dec. 369; *Lasala* v. *Holbrook,* 4 Paige Ch. 169, 25 Am. Dec. 524; *Aston* v. *Nolan,* 63 Cal. 269; *Ketcham* v. *Newman,* 141 N. Y. 205, 36 N. E. 197; *Schultz* v. *Byers,* 53 N. J. Law 442, 26 Am. St. 435:

For the purpose of so protecting the building by shoring, or propping, appellee would have had the right to go upon appellant's premises if necessary to accomplish such purpose. Though the weight of the authorities hold that notice should be given, yet in this case, as the owner of the building was a nonresident, notice to him was not necessary; but it was sufficient for his tenant, the appellee, to have such notice. *Schultz* v. *Byers*, 53 N. J. Law, 442, 22 Atl. 514.

I find a very instructive case in Pennsylvania on the relative rights of adjoining lot owners, and quote the following from it: "The owner of the lot, who improves it by putting up a dwelling or other house thereon, extending to the boundary of the same, which is a mere line of length without breadth separating his lot from the adjacent one belonging to another and remaining unimproved, must be considered as bound to use suitable materials and the requisite skill in doing so, in order that the walls of his building next to the adjacent lot may, if the owner thereof should think proper, in preparing the foundation for the house which he may afterwards resolve on erecting, to excavate the adjacent earth or to go below the foundation of the walls of the first building, admit of this being done by ordinary care and caution, with the use of the common and ordinary means of accomplishing it. If the first builder, in the construction of his wall, use materials unfit for the purpose; or the materials, though suitable, are so unskilfully built in the wall, that it cannot be preserved and supported by ordinary care and diligence, with the use of the usual and ordinary means resorted to in practice for that purpose, when the second builder comes to dig out the foundation for his house, but notwithstanding the use of such care, diligence, and means by the latter

to prevent it, the wall gives way, and with it a part or the whole of the first building falls, occasioning small or great loss to the owner thereof, it must be regarded as *damnum sine injuria*, for which the second builder is in nowise responsible." *Richart* v. *Scott*, 7 Watts (Pa.) 460. And with equal force and philosophical reasoning, it may be said, that though the original wall was properly constructed, yet if, by reason of age, decay, or the natural results of the elements thereon, it is rendered unsafe and dangerous by the removal of the lateral support, it is no less the duty of the owner or occupant to use all reasonable and necessary measures to protect it from falling.

From finding eight I quote the following: "Marshall's foundation wall was 21 or 22 inches thick, and 6 feet 6 inches deep, composed of rock laid in mortar. Many of the stones were small, and of irregular and improper shape to make a strong and durable wall, and especially so as to make those stones in the north side of said wall abutting appellant's soil. There were no bond stones, or if any, very few, reaching through the entire thickness of said wall. Some of the stones in the north side of said wall were put in edgeways so as to be of little help in giving strength to said wall. Said wall was put in about 25 years ago. The mortar used, if ever good, had, by reason of age and dampness, lost most of its cohesive strength, so that it served but little purpose in supporting and giving strength to said wall."

In finding number twelve it is found "that had said wall been well constructed and of the strength of foundation walls usually placed to support the kind of buildings erected thereon, then the water flowing in, upon and around the same as hereinbefore found, would not have affected or injured it so as to cause it to give way and fall."

In finding eleven it is stated that said wall, with the lateral support of appellant's soil, was reasonably safe, but that without such lateral support, and with appellant's soil removed, the wall was insufficient, and liable and likely to fall from any slight cause that might be reasonably expected to occur at any time; that the wall did remain intact for two or three hours after the removal of the lateral support; that neither appellee, appellant, nor Marshall, before the removal of the soil, had any knowledge of the formation and character of the wall, and that neither of them had any notice or fear or expectation that said wall or building would fall on account of the removal of the lateral support, except that Matthias X. Dienhart, appellee's president, had been warned by a bystander that said wall would give way and fall.

It will be observed by these findings that the wall was not strong and durable, both by its inherent construction, and by reason of its age and the rotten condition of the mortar, which had lost the most of its cohesive strength; that, with the lateral support of appellant's soil removed, it was "liable and likely" to fall from any slight cause that might reasonably be expected to occur at any time; and that appellee, through its president, was duly warned of the impending danger.

Suppose that, after the lateral support of appellant's soil had been removed, a wind had blown against the building sufficient to jar or shake it, and by reason thereof, the wall had given way; or that from some other "slight cause," other than the cause charged in the complaint, it had fallen; would it be contended for a moment that appellant would have been liable? I think not. I am unable to see how we can reconcile the unsafe condition of this foundation wall with appellee's right of recovery, as held by

the majority of the court, in the light of the authorities. So to hold would be to run counter to the doctrine declared in *Richart* v. *Scott*, *supra*, which, in my judgment, correctly holds that the owner of real estate who first constructs a foundation wall on the extreme limit of his premises, must so construct it, that the adjacent lot owner, may, at his pleasure, remove the lateral support of his soil without being liable to respond in damages for so doing. In other words, the wall first constructed must be so securely built, as to support itself and the building erected thereon, regardless of the lateral support of the adjacent soil, and if not so built, its owner, or occupant, must make it secure when such lateral support is removed, or suffer the consequences of his neglect. In this case appellee stood in the place of Marshall. It had notice that the excavation was being made; it was present, by its officers, as the work progressed; it was, at least, charged with knowledge of the condition of the wall; it was in fact warned of the danger; it knew the manner in which the bricks were piled in the street; it had knowledge of the character of the soil, gravel, and sand, at the sides upon which the wall rested; it knew that at one point on the line of the wall the soil or gravel had been removed two or three inches below the bottom of it; they were bound to know that the wall was "likely and liable to fall from any slight cause that might reasonably be expected to occur at any time;" and yet, with all this knowledge, it took no precautionary or necessary measures to protect itself from the impending danger, nor did it notify its landlord thereof.

The court found every fact in favor of appellant, except the fact of piling the bricks in the street, which the majority of the court has held actionable negligence on his part. To this doctrine I cannot sub-

scribe. The court found that the work of excava-
tion was carefully and properly made; that Martin,
the contractor, was an experienced workman, and
that he and his employes were careful in doing the
work; and that they did not remove or strike or dis-
turb any of the stones in the wall, and did not dig
under said foundation in any place.   In other words,
it is found that all that Martin did was to remove
appellant's soil to the boundary of his lot, which he
had a right to have done, and which was done in a
prudent and careful manner.   The Marshall wall was
not in any way weakened and injured, except by the
removal of the lateral support of appellant's soil,
which he had both a natural and legal right to have
done.

Under all these facts, I hold, with the great weight
of the authorities, as I believe, that it was appellee's
duty to protect itself from the natural results of such
removal, by shoring, propping, bracing, or by some
means that would give to the wall an equal support
to that of appellant's soil before it was removed.
*Block* v. *Haseltine, supra; Charless* v. *Rankin, supra;
Panton* v. *Holland, supra; Lasala* v. *Holbrook, su-
pra; Aston* v. *Nolan, supra.* Its failure to do this was, in
my judgment, such contributory negligence as
should preclude its recovery.   To hold otherwise
is to antagonize the great weight of the authori-
ties, both in England and in the United States.   The
burden of proof was on the appellee to establish, not
only the negligence of appellant, but its freedom
from fault as well.   Under the facts found, it was
undoubtedly, in my opinion, guilty of contributory
negligence, in that it failed to act in the face of danger
to protect it from the fall of the building which in the
language of the finding "was liable and likely   *   *   *
from any slight cause that might reasonably be ex-
pected to occur at any time."

With great respect for the opinion of the majority of my associates, in holding that the judgment should be affirmed, I am constrained to hold to the contrary, for three reasons: (1) Because the injury complained of resulted from the acts of an independent contractor; (2) because the unauthorized depth of the excavation of the cellar was the proximate and immediate cause of the injury from water, and not the obstruction of the gutter by piling bricks therein, as held and so ably and fully discussed by Henley, J., in his dissenting opinion; and (3) because of contributory negligence on the part of appellee.