Audie SPALL, Defendant-Appellant,

Robert & Elsie Whitson, Defendants,

v.

Chris JANOTA, Plaintiff-Appellee.

No. 2-1279A369.

Court of Appeals of Indiana,
First District.

July 3, 1980.

William C. Kreegar, Chesterfield, for defendant-appellant.

Stephen D. Clase, Anderson, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Audie Spall appeals from a judgment in the amount of $35,000 entered against her [1] in the Superior Court of Madison County, Division I, in favor of Chris Janota, which judgment was predicated upon an alleged deprivation of lateral support to Janota's land by Spall resulting in damage to a dwelling house on Janota's real estate. We reverse.

## STATEMENT OF THE FACTS

In 1965, Janota purchased the house and lot in question, together with an adjoining house and lot, for $19,900. He resided in the house at 1522 Johnson Avenue in Anderson, Indiana, which is the subject of this action, from 1965 until 1968 when he moved to California. Janota returned to Indiana in 1971.

Audie Spall was the record owner from 1956 until 1977 of a lot located at 1525 Miller Avenue, which lot is immediately east of Janota's Johnson Avenue lot. The land slopes downward from Janota's land to Spall's lot. Spall does not live on the Miller Avenue lot; rather, it is occupied by her son, Robert Whitson, and his wife, Elsie. Spall conveyed this lot to Whitsons in October 1977. Whitsons have resided in a mobile home on the Spall lot since 1956. In 1971, Whitsons purchased a larger mobile home, and in order to accommodate this larger unit, an excavation was made into the hillside approximately 35 to 40 feet in width and 12 feet in depth. The excavation was made by persons employed by Whitsons. The Spall lot extends some 25 to 35 feet from the cut-out or excavation to the rear line, and there is a 12 foot platted, but not improved, alley between the rear of the Spall lot and the rear of Janota's lot.

In 1971, after his return from California, and after the excavation on the Spall lot, Janota noticed cracks appearing in his house, and these cracks have become worse resulting in substantial damage to the house. Janota testified that there were no cracks when he went to California in 1968. The cracks and damage to Janota's house were caused by "slope failure" resulting from the cut or excavation made in the hillside on the Spall property.[2]

Janota testified that in his opinion, the value of his house if it were not damaged would be $35,000. There was no evidence of its value in its damaged condition. Although Janota testified that he had expended some $2,000 in various repairs, there was no evidence of the cost of restoring Janota's house to its prior condition. Peter Bergman, an expert witness produced by Janota, testified that two possible methods of halt-

---

1. Janota's claim against Robert and Elsie Whitson was not tried and determined in the trial of the claim against Spall. The claim against the Whitsons remains pending.

2. There was other evidence that the cause of the cracks and damage to Janota's house was the fact that the house was erected upon a concrete slab with no footings or foundation. However, under our standard of review, we may not re-weigh conflicting evidence or judge credibility of witnesses, but may consider only that evidence which is most favorable to the prevailing party. *Ray v. Goldsmith*, (1980) Ind. App., 400 N.E.2d 176; *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, (1978) Ind., 380 N.E.2d 1225. Accordingly, we accept for purposes of this appeal, the testimony of Janota's expert as to the cause of the damage.

ing the "slope failure" were (1) construction of a retaining wall at the excavation site or (2) shoring up the foundations of Janota's house. Bergman gave an opinion that the cost of a retaining wall might be $10,000 and the cost of shoring the foundation less.

The only evidence of any authorization of, consent to, or knowledge of the excavation on the part of Spall was by answer to an interrogatory which will be stated later in this opinion.

### ISSUES

1. Whether or not the decision of the trial court is supported by sufficient evidence.

2. Whether or not the decision of the trial court was contrary to law in that it was based upon a standard of absolute liability.

3. Whether or not the amount of recovery was excessive.

### DISCUSSION AND DECISION

*Issues One and Two*

■ A landowner has an absolute right to have his land in its natural state laterally supported by the lands of an adjoining landowner, and, if the adjoining landowner excavates on his land thereby depriving the lands of his neighbor of lateral support, damaging said land in its natural state, the adjoining landowner is absolutely liable for such damage even though he is free from any negligence. *Wolf v. Forcum,* (1959) 130 Ind.App. 10, 161 N.E.2d 175; *Schmoe v. Cotton,* (1906) 167 Ind. 364, 79 N.E. 184; *Bohrer v. Dienhart Harness Co.,* (1898) 19 Ind.App. 489, 49 N.E. 296; *Block v. Haseltine,* (1892) 3 Ind.App. 491, 29 N.E. 937; *Moellering v. Evans,* (1889) 121 Ind. 195, 22 N.E. 989; 1 I.L.E. *Adjoining Landowners* § 1; 1 Am.Jur.2d *Adjoining Landowners* § 37; 2 C.J.S. *Adjoining Landowners* § 9; 2 *Thompson on Real Estate* (1961 Repl.), § 415.

■ However, the rule is different when the case involves injury to buildings caused by the withdrawal of lateral support, for there is no absolute right to lateral support of buildings. Liability for damage to buildings resulting from the loss of lateral support must be based upon the negligence of the adjoining landowner in carrying on the activity which occasioned the loss of lateral support. *Wolf v. Forcum, supra*; *Schmoe v. Cotton, supra*; *Bohrer v. Dienhart Harness Co., supra*; *Block v. Haseltine, supra*; 1 I.L.E. *Adjoining Landowners* § 2; 1 Am. Jur.2d *Adjoining Landowners* § 51; 2 C.J.S. *Adjoining Landowners* § 20(a). The court in *Block v. Haseltine,* at 3 Ind.App. 498, 29 N.E. 939 stated: "The law is also settled that where a party is about to endanger the land to his neighbor, by improvements on his own land, he must give notice and use ordinary skill in conducting such improvements; he is liable for damages caused by willful, or negligent, acts. [Citations omitted.]" In *Bohrer v. Dienhart Harness Co.,* at 19 Ind.App. 498–99, 49 N.E. 299, the court stated the notice rule thus:

> "Where one, in making improvements on his own land, excavates it, and thereby endangers the support of a building upon the adjoining land of another, the former, by giving notice to the latter, may relieve himself of the necessity of using extraordinary efforts to protect the building; but in making such excavation ordinary care must be exercised to avoid such danger, and the person making it will be responsible for the consequences of negligence therein of himself or his servants."

■ There are two viewpoints concerning the effect of the failure to give notice in a case where the notice requirement would be applicable. One view regards the lack of notice as negligence *per se,* while the other holds that the failure to notify is evidence of negligence for the consideration of the trier of fact. *See*: Note, 14 Temple L.Q. at 254–57 (1940). The better view is that failure to give notice is evidence of negligence. *Id.* Such appears to be the general rule. 1 Am.Jur.2d *Adjoining Landowners* § 51; 2 C.J.S. *Adjoining Landowners* § 20. Further, we believe that the element of foreseeability is also involved in the determination of the requirement of notice and the

failure to give notice as constituting negligence. Most of the cases involving damage to the buildings from excavations on adjoining land which have alluded to the notice requirement are cases involving excavations immediately adjacent to the foundation walls of the adjoining building where the possibility of endangering such walls is obvious. Where there is some distance separating the excavation and the building upon adjoining land, the danger may not be so apparent; thus, the question of the foreseeability of the danger becomes an important issue.

Since this action sought damages for injury to Janota's house resulting from the deprivation of lateral support by the excavation on the Spall land, it is clear that the rule of absolute liability is not applicable. Janota can only recover if the loss of lateral support was occasioned by Spall's negligence. Therefore, we must consider what constitutes negligence in such a case. In *Block v. Haseltine, supra,* at 3 Ind.App. 496, 29 N.E. 939, the court said: "If negligence, want of care, or unskilfulness is indulged in, and thereby the adjoining building is injured or thrown down, the party so doing the work is liable. *A reasonable degree of care and skill is required. . . .*" (Emphasis added.) And at 3 Ind.App. 497, 29 N.E. 939, the same court stated: "In determining whether a party has been guilty of carelessness in excavating on his own land, reference may be had to what is usually done by other builders in similar cases." Thus, the standard of care required is that common to all negligence actions, that is, the duty to use reasonable or ordinary care under the circumstances. 1 Am. Jur.2d *Adjoining Landowners* § 49; 2 C.J.S. *Adjoining Landowners* § 19; 2 *Thompson on Real Property* (1980), § 417, at 629–30, where it is said:

"... [T]he doctrine of lateral support has been extended so as to hold an excavator liable even for buildings on the adjoining land where the excavation was negligently done and injury resulted to such buildings. As in most negligence problems, the question of what is negligence rests upon the principle of 'ordinary care.' In this case 'ordinary care' is ordinary or reasonable care and skill, . . . the test is . . . what other builders would do under similar circumstances. . . ." [3]

The question then becomes what constitutes due care under the circumstances. "It is impossible to state any comprehensive general rule as to what constitutes due care or the want of it in excavating near buildings on adjoining land; each case depends for its solution on its own particular facts." 1 Am.Jur.2d *Adjoining Landowners* § 50, at 725. Nevertheless, certain guidelines can be gleaned from authorities which are helpful in considering the question of whether or not specific conduct, in cases of this nature, is unreasonable.

"... If anyone, in excavating adjacent land, negligently withdraws lateral support, he incurs liability for all damages proximately caused thereby, including consequential damage to structures on the supported land. The plaintiff, naturally, has the burden of proving the fact of negligence. The criterion is phrased as 'reasonableness' of conduct. This generality has been broken down into at least five subdivisions applicable to cases in which the removal of support does not incur absolute liability under the common-law basic relationship on lateral support. Conduct is labeled unreasonable (and therefore negligent) when

(1) An unnecessary excavation is made by one who foresees that it will cause a neighbor's land to subside;

---

3. We do not perceive the statement from *Thompson on Real Property* or the previously quoted statement from *Block v. Haseltine, supra,* to substitute an industry or trade standard for the standard of reasonable or ordinary care. Rather, we believe the standard to be such care as an ordinarily prudent person would use under the circumstances of the particular case, 1 Am.Jur.2d *Adjoining Landowners* § 49, and that what other builders usually did in similar circumstances is evidence which may be considered by the trier of fact on the issue of reasonable care.

(2) The excavation serves a useful purpose, but is made without giving notice to the adjoining possessors in sufficient time to permit them to take the steps necessary to prevent subsidence;

(3) The excavator assumes responsibility for safeguarding his neighbor's land but is negligent in executing the task;

(4) The excavator informs his neighbor of the precautions which he plans to take but thereafter changes his procedure without informing his neighbor of the facts of these changes; or

(5) The excavator fails to ascertain in advance, by customary methods, whether the proposed excavation is likely to endanger the adjoining land and buildings.

Negligence can also be predicated upon a departure from the accepted methods of excavation, established by common engineering practices. Thus, a finding of negligence can result from:

(1) The failure to excavate friable soil in sections;

(2) The failure to erect temporary shorings for temporary excavations;

(3) The failure to avoid prolonged exposure of the adjoining land to the elements; or

(4) The use of unsuitable tools or incompetent workmen.

In determining what is a reasonable precaution, the court should consider the opinion of experts as to the propriety of the engineering methods, the expense of the precaution, and the necessity and utility of the excavation, in considering which, the nature of the property interest of the person making the excavation becomes important. Even if the court should find negligence on the part of the person making the excavation, contributory negligence of the plaintiff would provide a good defense."

5 *Powell on Real Property* § 701, at 299–302.

■ Further, we think the question of foreseeability is important in this case. We agree that this issue does not ordinarily arise where the excavation made was in close proximity to the building damaged, but such question does arise where the excavation and the building are separated by some considerable distance. In the latter situation, it is generally held that the excavator is not liable for injuries to a building that were not reasonably foreseeable. 1 Am.Jur.2d *Adjoining Landowners* § 56.

■ We see nothing in the evidence in this case which would support a finding of negligence in making the excavation on the Spall property. There is no evidence that the excavation was made in an unskillful or dangerous manner. There is no evidence supportive of a finding that damage to Janota's house reasonably should have been anticipated by the making of the excavation. We perceive no evidence of any of the criteria listed in the previously quoted statement from *Powell on Real Property*, other than a failure to give notice to Janota. However, in view of the facts of this case, the distance separating the cut in the hillside from Janota's house, and the lack of evidence of foreseeability of such consequences, we do not believe that lack of notice, standing alone, is sufficient to support a finding of negligence which was the proximate cause of the injury, and thus impose liability on the basis of negligence.

■ While we are uncertain whether the court found Spall liable on a theory of absolute liability or upon a negligence basis, neither can be supported. For reasons previously stated, the absolute liability standard is inapplicable in cases of damage to buildings, and there is no evidence which would support liability predicated upon negligence.

Further, as to Audie Spall, there is insufficient evidence to support an imposition of liability as to her, in any event. The only evidence of any knowledge on her part of the excavation is found in an interrogatory and her answer thereto, which were as follows:

"*Interrogatory No. 5*:

At any time did you cause or consent to or have knowledge of the performance of any digging, trenching or other earth moving work of any kind on the real estate described in your answer to Interrogatory # 4?

"*Answer*:

Yes, after completion."

Concerning the party against whom an action for withdrawal of lateral support can be maintained, it is said in 5 *Powell on Real Property* § 699, at 289:

"The cause of action exists against the person who made the withdrawal of support causing subsidence. Thus, the action cannot be brought against the possessor of the supporting land at the time of the subsidence for a withdrawal of support made by a predecessor of such possessor or by someone formerly in possession of the supporting land; or against a vendor of land who has retained title, for acts done by his vendee in possession; or against a lessor for withdrawal of support caused by his lessee. . . ."

 In this case, the uncontradicted evidence presented by defendant was that while Audie Spall held the record title to the Miller Avenue property, she purchased it for and gave it to her son and daughter-in-law, the Whitsons; that the Whitsons paid the taxes on the property; and that Whitsons caused the excavation in question to be made without consulting Spall. We believe the interrogatory and answer thereto relied upon to establish liability on the part of Spall, assuming *arguendo* negligence in making the excavation, is too indefinite, ambiguous, and uncertain to accomplish the desired purpose.

We believe the judgment against Spall to be contrary to law if predicated upon absolute liability, and unsupported by sufficient evidence if based on negligence.

*Issue Three*

Since we reverse on Issues One and Two, we need not discuss this issue. Nevertheless, we deem it appropriate to comment upon the issue of damages.

 The measure of damages for injury to a building caused by negligent withdrawal of lateral support is either the diminution in its value or the cost of restoration, whichever is the smaller. 2 C.J.S. *Adjoining Landowners* § 36; 1 Am.Jur.2d *Adjoining Landowners* §§ 74–75. The evidence in this case was that the value of Janota's house at the time of trial, if it had not been damaged, was $35,000. There was no evidence as to its value in its damaged condition and no evidence as to cost of restoration. There was no evidence upon which the court could have found the proper damages. Thus, the award of damages was improper.

For all the reasons herein stated, the judgment is reversed.

ROBERTSON, P. J., and NEAL, J., concur.