Harold E. CLARK, Jr. and Ruth M. Clark; Ed Kanizer II; Vermillion Acres, Inc., Arketex Ceramic Corp., Appellants–Defendants,

v.

Malcolm H. AUKERMAN and Violet H. Aukerman, Appellees–Plaintiffs.

No. 61A04–9311–CV–436.

Court of Appeals of Indiana.

Aug. 31, 1995.

Larry C. Thomas, Thomas & Thomas, Clinton, Lynn A. Francis, Frey, Hunt, Hassler & Lorenz, Terre Haute, for appellants.

Stephen L. Trueblood, Trueblood Law Firm, Terre Haute, Bruce D. Aukerman, Mann Chaney Johnson Goodwin & Williams, Terre Haute, for appellees.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellants-defendants, Harold and Ruth Clark, Ed Kanizer II, and Vermillion Acres, Inc., (collectively "Clark," unless otherwise apparent) appeal the adverse judgment entered against them on Malcolm and Violet Aukerman's ("Aukerman") claim to quiet title. We affirm.

### Issues

Clark presents four issues for review, which we consolidate and restate as follows:

I. Whether Aukerman had acquired title to the disputed land by adverse possession; and

II. Whether hearsay evidence was improperly admitted.

### Facts and Procedural History

The facts most favorable to the judgment are that prior to November of 1966, Arketex Ceramic Corporation was the record title holder to real estate located in Sections 10, 11, 14 and 15, Township 16 North, Range 9

West, in Vermillion Township, Vermillion County, Indiana. Arketex had used much of the rural land to mine clay for its manufacturing operations.

Over the course of 1966, Aukerman and Arketex engaged in negotiations concerning Aukerman's purchase of a parcel of Arketex's tract in Section 11. The parcel was represented to be 53.65 acres. In November 1966, Aukerman purchased the parcel. The deed to the land stated, after describing the boundaries, that the parcel contained "(45.36) acres, more or less." The southern boundary as stated in the deed was the section line between Sections 11 and 14. South of the section line was a dilapidated fence line running east/west. Aukerman believed that this fence line was the actual southern boundary of the tract he had purchased.

Beginning in December 1966, Aukerman began the process of tearing out the southern fence line and replaced it with an electric fence capable of turning cattle. In the area where no existing fence was located, Aukerman extended the fence along the line he believed was the southern boundary. In 1967, Aukerman began mowing, bulldozing, and clearing undergrowth from a portion of the land abutting the southern fence. In 1969, Aukerman purchased cattle to pasture on the land. Aukerman has continuously used the land to pasture cattle since 1969.

In 1970, Aukerman had 1,600 feet of tile installed to drain the wetland portion of the property, which included a portion of the land adjacent to the southern fence. After draining the land, Aukerman bulldozed the remaining brush and trees, and planted the area with hay.

Since his purchase of the land, Aukerman has posted "No Trespassing" signs along all boundaries, including the entire southern fence line. Aukerman has maintained the fence by spraying herbicide under the fence and mowing in order to keep cattle off of the fence.

In November of 1974, Clark purchased 140.5 acres from Arketex in Sections 10, 14, and 15. Clark's tract abutted Aukerman's land on the south and west. Clark believed that the fence maintained by Aukerman was the northern boundary of his tract, although his deed, like Aukerman's, indicated that the actual boundary was the section line between Sections 11 and 14. At no time did Clark enter onto the land north of the fence, nor did Aukerman enter onto the land south of the fence. Both Clark and Aukerman gave permission to people to hunt on their land, giving them warnings to stay on their respective side of the fence.

In 1989, Clark had his land surveyed and discovered that the actual boundary between his and Aukerman's land was the section line between Sections 11 and 14. Upon receipt of the notice of survey, Aukerman filed this action seeking an order quieting title in himself to all the land south of the section line and north of the fence line. Kanizer and Vermillion Acres, Inc., being contract purchasers of Clark's land, were added as party defendants. Clark filed a counterclaim, also seeking an order quieting title to the disputed land. Trial was had to the court, which entered specific findings and conclusions. The trial court entered an order quieting title to the land in Aukerman, holding that he had acquired title to the disputed land by adverse possession.

### Discussion and Decision

We have previously stated the appropriate standard for reviewing a trial court's entry of special findings in *Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, *trans. denied.*

### I. Adverse Possession

Clark argues that the evidence does not support the trial court's findings that Aukerman met all the required elements for adverse possession. In order to establish title to land by adverse possession, the adverse claimant must prove that his possession was (1) actual, (2) visible, (3) open and notorious, (4) exclusive, (5) under claim of ownership, (6) hostile, (7) and continuous for the statutory period. *Penn Central Transp. Co. v. Martin* (1976), 170 Ind.App. 519, 353 N.E.2d 474. An adverse claimant who sustains his burden of proving the requisite elements acquires title to disputed land by operation of law, and the owner's original ·

title is therefore extinguished. *Snowball Corp. v. Pope* (1991), Ind.App., 580 N.E.2d 733.

Clark argues that Aukerman's occupation of the land was not either hostile or under a claim of right. Clark contends that Aukerman's possession of the land between the section line and the fence line was by permission of Arketex, and that therefore Aukerman did not hold the land in direct opposition to the holder of legal title.

■ For purposes of establishing title to land by adverse possession, an adverse claimant's possession of land is hostile where he does not disavow his right to possess the property or acknowledge that it is subservient to the title of the true owner. *Rieddle v. Buckner* (1994), Ind.App., 629 N.E.2d 860. Here, the trial court specifically found that when Aukerman purchased the tract of land from Arketex, he believed he was purchasing all of the land north of the fence line. The record also shows that Arketex believed it was selling Aukerman all the land north of the fence line. It is a settled rule of Indiana law that:

> Where owners of adjoining premises establish by agreement a boundary or dividing line between their lands, take and hold possession of their respective tracts, and improve the same in accordance with such division, each party, in the absence of fraud, will thereafter be estopped from asserting that the line so agreed upon and established is not the true boundary line, although the period of time which has elapsed since such line was established and possession taken is less than the statutory period of limitations.

*Adams v. Betz* (1906), 167 Ind. 161, 169–170, 78 N.E. 649, 652.

■ Here, while more, not less time than the statutory period had passed before Clark brought his claim in ejectment, the general rule as stated above still applies: parties agreeing to a common boundary are estopped from challenging that the boundary so agreed is not the true boundary. The trial court's findings that both Aukerman and Arketex believed that Aukerman was purchasing all the land north of the fence line

are supported by the evidence. The findings support the trial court's conclusion that Aukerman's possession of the disputed parcel was hostile to Arketex's legal title and under a claim of right.

■ The evidence also shows that Clark had notice of Aukerman's possession of the land. When Clark purchased the land south of Aukerman's, he too believed that the fence was the boundary between the two tracts. Also, Clark permitted others to hunt and log on his land, but only up to the fence line. It was only when Clark ordered the survey in 1989, that he discovered that the record boundary was the section line between Sections 10 and 14. The existence of the fence and Aukerman's continuing acts of ownership over the land were sufficient to put Clark on notice that Aukerman was claiming possession to the area. *See Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189 (fence was sufficient to put owner on notice of adverse possessor's claim to the property).

■ In addition, the evidence shows that Aukerman satisfied the remaining elements of adverse possession. The record reveals that from the time of purchase in 1966, Aukerman considered himself to be the owner of all the land north of the fence line. Clark contends, however, that Aukerman's acts were not sufficient to constitute possession of the land because much of the area along the fence line was wild. "Cases of adverse possession must, of necessity, be decided on a case by case basis, for what constitutes possession of a 'wild' land may not constitute possession of a residential lot, just as possession of the latter may not constitute possession of a commercial lot." *McCarty v. Sheets* (1981), Ind., 423 N.E.2d 297, 300. While here the condition of the land made it difficult to walk the entire fence line, Clark does not contend that he was unaware of the existence of the fence or of Aukerman's possession of the land on the other side. From the time Aukerman took possession, he has continuously repaired and upgraded the fence. Aukerman purchased cattle, which grazed in the pasture and sheltered in the wooded area near the fence. Aukerman improved the disputed area by installing drain tiles, bulldozing the brush, and planting hay.

We agree with the trial court that these facts were sufficient to prove that Aukerman possessed the land. *See also Dowell v. Fleetwood* (1981), Ind.App., 420 N.E.2d 1356, 1359 ("Use of land as a pasture or garden, up to a fence line, under mistake as to the true boundary line, evinces open and notorious, visible, and exclusive occupancy.")

■ Clark also argues that the trial court erred by holding that Aukerman did not need to prove the supplemental element of adverse possession, that of paying property tax on the parcel. Indiana Code § 32–1–20–1 provides that an adverse claimant must pay all the taxes and special assessments due on the real estate during the period of adverse possession. However, our supreme court has held that this statutory requirement does not apply where the disputed area is contiguous to property owned by the adverse claimant and he has paid taxes according to the tax duplicate, even though the tax duplicate does not include the disputed strip. *Echterling v. Kalvaitis* (1955), 235 Ind. 141, 126 N.E.2d 573.

■ Here, the parties each possessed the land up to the fence line even though the actual boundary between the two parcels was the section line. The disputed area was contiguous to the property owned by Aukerman. In addition, Aukerman paid taxes on the property he owned in Section 11. Thus, the exception to the statutory requirement, as set forth in *Echterling,* was applicable. The trial court properly found that Aukerman was not required to pay the taxes on the disputed tract.

■ Clark finally argues that the trial court's judgment awarded more land to Aukerman than Aukerman claimed. Clark contends that because Aukerman and Arketex negotiated for 53.65 acres, yet the deed stated that Aukerman received only 45.36 acres, any land awarded should only be so much as to make up 53.65 acres. We disagree. It is not determinative to Aukerman's claim here that during the negotiation process both Aukerman and Arketex thought that the land constituted 53.65 acres. "[W]here it appears in a deed of conveyance of land by the qualifying words 'more or less,' the statement of

the number of acres in the deed is a mere matter of description, and not the essence of the contract, the purchaser, in the absence of fraud, takes the risk as to the quantity of acres conveyed to him." *Betz,* 167 Ind. at 169, 78 N.E. 649. Aukerman took the risk that the quantity of land in Section 11 he was purchasing was different from the 53.65 acres represented to him. It was in fact less. Aukerman believed, however, that no matter what the actual size of the parcel he was buying, that the southern boundary was the fence line. Aukerman took possession and exercised dominion over that land. In his complaint, Aukerman does not claim enough land to constitute 53.65 acres, but asserts a claim of title by adverse possession to all the land within the fence line. The trial court did not err in holding that Aukerman acquired title to all the land inside the fence line.

In conclusion, the evidence supports the findings, which in turn support the judgment, that Aukerman acquired title to the land by adverse possession.

## II. Hearsay Testimony

Clark argues that hearsay evidence was improperly admitted. At the trial, Malcolm Aukerman was allowed to testify as to statements made to him by Ross Evans. Evans, who was deceased at the time of trial, had been a vice-president and land agent of Arketex. Aukerman testified that when he purchased the land, he and Evans walked the boundaries. Aukerman testified that while walking along the old dilapidated fence line, Evans told him that the fence was the southern boundary of the parcel he was buying.

■ "[T]o establish adverse possession, the plaintiff may prove declarations of former owners under whom he claims, when such declarations were made during possession and while defining or pointing out the boundaries to a person negotiating for the purchase." *Burr v. Smith* (1899), 152 Ind. 469, 474, 53 N.E. 469, 471, *citing* Jones, Ev. § 358. In *Burr,* the appellee brought an action to enjoin the appellant from entering upon land situated upon the appellee's side of a fence line. The trial court permitted the appellee to prove a declaration made by the

appellee's immediate grantor that there had never been an issue as to whether the fence line was the boundary between the two parcels. On appeal, the appellant argued the admission of the evidence was error. In rejecting appellant's contention, the supreme court stated:

> Carr [the immediate grantor], as we have said, was at the time he made the declaration, in actual possession of the land in dispute. The statement in controversy was made by him to the witness, Mr. Smith, who was then proposing to purchase the land for the appellee. His declaration was contemporaneous with his possession, and related thereto, as it at least tended to show the extent of Carr's possessory rights,—or, in other words, that his occupancy extended to the fence line. The facts that he was in possession of the land, and occupied it up to this line, at and prior to the time of appellee's purchase, certainly, under the issues, were facts proper to be introduced into evidence....

> It is well settled, as a rule of evidence, that, whenever it is competent to prove an act or transaction, the declaration of the actor, accompanying the act, in relation thereto or explanatory thereof, may also be proved[.]

*Burr*, 152 Ind. at 473–474, 53 N.E. at 471.

 The facts here are similar. Evans and Aukerman walked the boundaries of the parcel that Aukerman was purchasing. While doing so, Evans described the dilapidated fence line as being the southern boundary of the parcel. The statement of Evans was properly admitted.

Affirmed.

DARDEN and BAKER, JJ., concur.