**Roger W. ALLEN and Dana L. Allen, Appellants–Defendants,**

v.

**Larry E. MORAN, Appellee–Plaintiff.**

**No. 55A01–0105–CV–164.**

Court of Appeals of Indiana.

Dec. 28, 2001.

Phillip R. Smith, P.R. Smith and Associates, P.C., Martinsville, IN, Attorney for Appellants.

Peter R. Foley, Foley, Foley & Peden, Martinsville, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants Defendants, Roger and Dana Allen (the Allens), appeal the trial court's March 8, 2001 Entry and Order.

We reverse and remand.

---

## ISSUE

The Allens raise three issues on appeal, one of which we find dispositive and restate as follows: whether the trial court erred in finding that Appellee Plaintiff, Larry Moran (Moran), adversely possessed an area of land on their property.

## FACTS AND PROCEDURAL HISTORY

In 1961, Moran purchased approximately seventy-one (71) acres of land located in Jackson Township, Morgan County, Indiana. The property was sold to Moran by Cozzie St. John who explained that the east boundary line was designated by a fence. The fence was a woven and barbed wire fence that was supported by steel and wooden posts and trees along the way. When asked if he ever had a conversation with Maurice Sanders (Sanders), the former owner of the Allens' property, about the boundary line, Moran testified "Nothing about the boundary line. No." (R. 10). Additionally, Moran testified that the purpose of the fence was to keep Sanders' cattle from going on to his property.

In 1995, the Allens purchased approximately eighteen (18) acres of land adjacent to Moran's property, formerly Sanders' property. Also in 1995, a survey was performed on behalf of the Allens. The survey revealed that the fence was positioned to the west of the boundary line. Thus, the fence was found to be entirely on the Allens' property.

In 1998, the Allens removed the fence and began clearing the boundary line established by the survey. The Allens did this in anticipation of erecting a new fence on the boundary line. In late 1998, Roger Allen (Roger) and Moran had a conversation, wherein Moran asserted that the fence was the boundary line and Roger asserted that the survey established the actual boundary line and that he was proceeding pursuant to the survey and the advice of counsel with replacing the fence.

On December 27, 1999, Moran filed a Complaint to Quiet Title and For Damages against the Allens and J & W Fence Supply, Inc.[1] The complaint alleged that Moran and Sanders maintained a partition fence between the adjoining parcels of real estate which each agreed marked the boundary between the parcels. The complaint also alleged that Roger committed trespass and criminal conversion. On February 18, 2000, the Allens filed their Answer and Counterclaim to Plaintiff's Complaint. Among other things, the answer specifically denied Moran's claim that there was an agreement between Moran and Sanders as to the boundary line between their properties. The Allens also counterclaimed to quiet title.

On January 3 and February 8, 2001, a bench trial was held. On March 8, 2001, after taking the matter under advisement, the trial court filed its Entry and Order. In pertinent part, the trial court held as follows:

NOW FINDS and ORDERS as follows:

* * *

9. Plaintiff has demonstrated the actual, visible, open and notorious, exclusive, hostile and continuous use of the land to the west of the fence line for a period in excess of ten (10) years and is thereby entitled to quiet title in his favor by virtue of adverse possession.

10. Plaintiff shall have all property lying to the west of the fence line forever

---

1. On March 8, 2001, the trial court dismissed J & W Fence Supply, Inc. as a party, finding that "it no longer has any interest, legal or

equitable, in the real property subject to this action." (Appellants' Appendix at 6).

quieted in his favor and forever set at rest against the claims of Defendant[s].

11. Plaintiff has failed to demonstrate by a preponderance of the evidence that Defendant engaged in criminal trespass, specifically failing to demonstrate that Defendant was denied entry, by the Plaintiff, to the real property of Plaintiff.

12. Plaintiff has established by a preponderance of the evidence that Defendant, Roger W. Allen, did cut down, remove and convert for his own use the fence and posts between the parties' parcels of real property and did clear and convert to his own use portions of Plaintiff's real property, all of which acts constitute the act of criminal conversion.

13. As a result of Defendant's acts of criminal conversion, Plaintiff was damaged in the amount of $5,236.00 for the replacement costs of the fence and the amount of $375.00 for the cost to repair the damage resulting from the clearing and excavation of Plaintiff's property by Defendant.

14. Plaintiff shall not be entitled to treble damages.

15. Plaintiff shall be entitled to an award of attorney fees in the sum of $1,279.00.

16. Defendant shall take nothing by his counterclaim.

17. Plaintiff shall cause to be prepared a legal description of the fence line and shall submit the same to this court and counsel for Defendant for their review and the Plaintiff shall obtain court approval of said legal description, prior to the construction of a new fence.

(Appellants' Appendix at 7–8). On April 6, 2001, the Allens filed their Motion to Correct Error. On April 7, 2001, the trial court denied the Allens' motion.

The Allens now appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

The Allens argue that the trial court erred in entering its March 8, 2001 order. Specifically, the Allens argue that the trial court erred in finding that Moran adversely possessed an area of land on their property. We agree.

### Standard of Review

In *City of Dunkirk Water & Sewage Dep't. v. Hall,* 657 N.E.2d 115, 116 (Ind. 1995), our supreme court held as follows:

In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind.Trial Rule 52(A). In determining whether a judgment is clearly erroneous, the appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *See Estate of Reasor v. Putnam County* (1994), Ind., 635 N.E.2d 153, 158; *In re Estate of Banko* (1993), Ind., 622 N.E.2d 476, 481. A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence.

### Adverse Possession

Moran primarily relies on *Clark v. Aukerman,* 654 N.E.2d 1183, 1185–86 (Ind.Ct. App.1995), in which this court held:

In order to establish title to land by adverse possession, the adverse claimant must prove that his possession was (1) actual, (2) visible, (3) open and notorious, (4) exclusive, (5) under claim of owner-

ship, (6) hostile, (7) and continuous for the statutory period. An adverse claimant who sustains his burden of proving the requisite elements acquires title to disputed land by operation of law, and the owner's original title is therefore extinguished.

*Id.* (citations omitted).

Additionally, *Clark* held:

Where owners of adjoining premises establish by agreement a boundary or dividing line between their lands, take and hold possession of their respective tracts, and improve the same in accordance with such division, each party, in the absence of fraud, will thereafter be estopped from asserting that the line so agreed upon and established is not the true boundary line, although the period of time which has elapsed since such line was established and possession taken is less than the statutory period of limitations.

*Id.* at 1186 (quoting *Adams v. Betz,* 167 Ind. 161, 169 170, 78 N.E. 649, 652 (1906)).

In *Clark,* Aukerman and Arketex, the corporation that sold Aukerman his land, believed that Aukerman was purchasing all the land north of the fence line. *Id.* at 1186. Further, the evidence revealed that Clark had notice of Aukerman's possession of the land. *Id.* When Clark purchased the land south of Aukerman's, he believed that the fence was the boundary between the two tracts. *Id.* This was true up until the time when Clark had his land surveyed and found out that he actually owned land up to the fence line and past the fence line on Aukerman's side. *Id.* at 1185.

The evidence also revealed that from the time Aukerman took possession, he continuously repaired and upgraded the fence by replacing an old fence with a new electric fence, installing drain tiles, bulldozing the brush, and planting hay. *Id.* at 1185–86. In addition, Aukerman purchased cattle,

which grazed in the pasture and sheltered in the wooded area near the fence. *Id.* With the above information in mind, this court agreed with the trial court and found that the facts were sufficient to prove that Aukerman adversely possessed the disputed land, even though a survey showed that Clark owned the disputed land. *Id.* at 1187.

*Clark* is similar to the instant case. For example, as in *Clark,* Moran was told by Cozzie St. John, the former owner of Moran's property, that the fence was the east boundary line of the property. However, unlike *Clark,* Moran and Sanders, the former owner of the Allens' property, did not seem to have an understanding that the fence was the east boundary line between their properties. In fact, the evidence shows that the fence was constructed for the purpose of keeping Sanders' cattle from going on the neighboring property, not for designating a boundary line.

Also unlike *Clark,* there were no significant repairs or improvements to the fence or the area around the fence. Admittedly, Moran testified that occasionally the fence would be down in a place or two and he or Sanders would repair it. Moran also testified that at some point, "the south end [of the fence] was not too good and I replaced it completely." (R. 10). However, when asked what condition the fence was in before it was torn down, Moran testified that "[i]t wasn't, wasn't in real good shape." (R. 45). When asked if part of the fence was down, Moran stated "[t]here were areas that was down because there was no cattle over there." (R. 45).

■ In *McCarty v. Sheets,* 423 N.E.2d 297, 300 (Ind.1981), our supreme court held:

Cases of adverse possession must, of necessity, be decided on a case by case basis, for what constitutes possession of

a "wild" land may not constitute possession of a residential lot, just as possession of the latter may not constitute possession of a commercial lot. [citations omitted] It is apparent, however, that in all cases, the possessor's claim "must be limited to that portion over which he exercises palpable and continuing acts of ownership, as being the quantity which he claims as his own, there being no other evidence, in such case, to enable us to determine the quantity." *Bell v. Longworth*, (1855) 6 Ind. 273, 277.

Additionally, "[i]t is the general rule of law that legal record title is the highest evidence of ownership and necessarily not easily defeated." *Matthews v. Adoniram Grand Lodge of Perfection, Ancient Accepted Scottish Rite*, 129 Ind.App. 395, 401, 154 N.E.2d 806, 808 (1958). With this in mind, it should be noted that Moran's Warranty Deed makes no mention of the east boundary line being designated by a fence.

 While it is true that a fence can show a person's intent to claim all the land within the parameters of the fence, we cannot find that this is true is every case. *See Kline v. Kramer*, 179 Ind.App. 592, 599, 386 N.E.2d 982, 988 (1979). The fence in question here was not built for the purpose of establishing a boundary line. Moreover, we cannot find that Moran exhibited palpable and continuing acts of ownership over the fence or the land around the fence that was found, by the survey, to be the Allens' land. *See McCarty*, 423 N.E.2d at 300. Prior to it being torn down, the fence was not in good shape. From Moran's testimony, we gather that the fence did not need to be in good shape because there were no cattle on the neighboring land, i.e. the Allens' property. In fact, there had not been cattle on the neighboring land for many years. Thus, it is possible that the fence

had not been repaired or maintained for many years.

Accordingly, we find that Moran's claim of adverse possession fails. The evidence does not demonstrate that his possession of the land in dispute was actual, visible, open and notorious, exclusive, under claim of ownership, hostile, and continuous for the statutory period. *Clark*, 654 N.E.2d at 1185. Moreover, there is no evidence that Moran established by agreement with Sanders or the Allens that the fence was the boundary line between their lands. *Id.* at 1186. Thus, we find that the evidence does not support the trial court's judgment. *City of Dunkirk Water & Sewage Dep't.*, 657 N.E.2d at 116. Therefore, we find that the trial court's March 8, 2001 Entry and Order was clearly erroneous. *Id.*

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in finding that Moran adversely possessed an area of land on the Allens' property. Therefore, the trial court's March 8, 2001 Entry and Order is hereby reversed, and judgment is entered for the Allens on their counterclaim to quiet title.

Reversed and remanded.

BROOK, J., and MATHIAS, J., concur.