Terry COFFIN, et al., Appellant– Defendant,

v.

Mylene HOLLAR, Appellee–Plaintiff.

No. 45A03–9303–CV–115.

Court of Appeals of Indiana, Third District.

Dec. 30, 1993.

husband and wife. I.C. 34–1–14–5 (Burns Code Ed.Supp.1992).

Terry Coffin, pro se.

Patrick A. Schuster, Crown Point, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Terry Coffin[1] appeals a judgment entered in favor of appellee-plaintiff Mylene Hollar regarding an easement to allow Hollar access to Cedar Lake.

The evidence relevant to the appeal discloses that in 1956 Hollar's parents, Sarah and Cordie Coffin, conveyed property to Hollar. Because the property conveyed to Hollar was separated from the waters of Cedar Lake by other property owned by the Coffins and operated as a resort, the Coffins included in the deed a ten-foot easement across the resort property. However, Hollar was allowed access to the entire resort property.

After Hollar's father passed away, Hollar's mother began selling the resort property to her son, Merritt Coffin, who is Hollar's brother. Also, Hollar's mother moved into Hollar's residence on Hollar's property. Hollar's mother and Hollar continued to enjoy use of the entire resort property.

In approximately 1983, Merritt's son, Terry (Coffin), began erecting a fence be-

---

1. Coffin purports to represent all defendants on appeal. Coffin does not disclose whether he is an attorney. However, he has not entered an appearance as appellate counsel for the other defendants, Coffin's wife and a bank. Thus, Coffin may not represent the other defendants on appeal.

tween the properties while Hollar was away for an extended period. Hollar objected to erection of the fence without a survey to establish boundaries. In 1986, a survey was performed. The survey indicated that the fence was on Hollar's property.

In 1988, Merritt became the fee simple owner of the resort property. Merritt then transferred the property to a trust administered by INB National Bank. Then Coffin began purchasing the resort property from the trust. In late 1991 or early 1992, Coffin barred Hollar from using any of the resort property or her easement. Coffin also blocked access to the easement.

In February 1992, Hollar instituted this suit. After Coffin, who was represented by counsel at the time, moved for a change of venue, Hollar amended her complaint in June 1992. Hollar's amended two-count complaint alleged *inter alia* that she was the fee simple owner of the property conveyed by her parents; that she was also granted an easement across the resort property in 1956; that Coffin and his wife were in the process of purchasing the servient estate from the bank; that the defendants "have interfered and continue to interfere with the quiet use and enjoyment of the easement deeded to [Hollar] ... by allowing their tenants to block the easement and also by erecting a fence with the intention of prohibiting [Hollar's] access to and use of the easement"; and that all obstructions to the easement and fences encroaching on her property be removed, and all interference with the quiet enjoyment of her property and easement be discontinued, and that her property be returned to level condition.

Coffin's answer admitted all allegations of Hollar's complaint except her allegation as to her residence. Coffin raised adverse possession, laches, and estoppel based upon an agreed boundary theory as affirmative defenses.

On August 26, 1992, a trial without the intervention of a jury was held. Because the parties had agreed to the existence of the easement, the obstruction of the easement, and the encroachment of the fence on Hollar's property, the trial proceeded on Coffin's counterclaim to quiet title of the easement and upon Coffin's affirmative defenses. The parties were ordered to submit proposed findings, conclusions and memoranda. On December 8, 1992, the court entered its findings of fact, conclusions of law, and a judgment for Hollar. This appeal ensued. Other evidence is discussed below as necessary to a resolution of the issues.

Coffin raises several issues on appeal.[2] As restated and consolidated, the issues are:

(1) whether sufficient evidence supports the judgment in favor of Hollar;

(2) whether a fee simple owner of a servient estate can gain adverse possession of an easement; and

(3) whether Hollar's claims were barred by the doctrine of laches.

■■■ Here, the court entered special findings of fact and conclusions of law upon its own order. Ind. Trial Rule 52(A) provides in pertinent part, "[u]pon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury ... shall find the facts specially and state its conclusions thereon." Because the record does not reflect that a party requested special findings and conclusions under T.R. 52(A), the court's order requiring proposed findings and conclusions by a date certain should be construed as the court's "own motion." Had the court ordered proposed findings pursuant to a request by a party, entry of findings or the lack thereof would be reviewed depending upon whether the party made a written motion prior to admission of evidence. *See E.W.R. v. T.L.C.* (1988), Ind.App., 528 N.E.2d 106, 108 (court's fail-

---

**2.** Coffin appears to argue that due process was violated because Hollar was allowed to present evidence, which he terms "a weak defense." This issue, as well as others, are subsumed into the issue regarding sufficiency of the evidence. Additionally, it is without argument that each party may present evidence.

ure to make special findings after oral request by party, did not constitute error in that T.R. 52(A) is not triggered by oral motion of party). Thus, special findings were entered in the present case upon the court's own motion.

When such findings are entered, this Court applies a two-tier standard of review. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 569. The Court first determines whether the evidence supports the findings and then determines whether the findings support the judgment. *Id.* Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.* at 569–570.

This Court will neither reweigh the evidence nor judge the credibility of the witnesses when determining whether the findings and the judgment are clearly erroneous. *Id.* at 570. Rather this Court will view only the evidence in the record which supports the judgment along with all reasonable inferences to be drawn from the evidence. *Id.* Accordingly, the findings and judgment will be disturbed only if the record is devoid of facts or inferences to support them. *See id.*

Coffin quite candidly admits that in his view this Court should reweigh the evidence and judge the credibility of witnesses in the interest of "justice." Unfortunately, our standard of review prohibits compliance with Coffin's request. Moreover, Coffin does not specifically attack the trial court's findings as erroneous, that is without support in the record. Instead, Coffin repeatedly requests a determination that his version of the events are more credible.

Although Coffin has not preserved the issues as to adverse possession and laches for review due to his failure to attack the findings, reference to the findings and the relevant evidence demonstrates that the trial court's judgment is supported by the record. Notwithstanding the question whether a fee simple owner of a servient estate can acquire adverse possession of an easement over the servient estate, Coffin could not prevail on his adverse possession claim.

Adverse possession of real estate is established upon a showing that the possession has been actual, visible, notorious, exclusive, under a claim of ownership, hostile to the owner of record title, and continuous for the statutory period. *Perez v. Gilbert* (1992), Ind.App., 586 N.E.2d 921, 926. To establish the claim, each element of adverse possession must be met before the possession may ripen into legal title as against the holder of the record title. *Id.*

It is undisputed that several of the resort's campsites were established on the easement over the years. However, the evidence demonstrates that Hollar and her husband allowed the resort to use the easement inasmuch as they were allowed passage over all portions of the resort to gain access to the lake. Although Hollar did not use the easement often over the years, she had no need until her access to the resort was terminated. Among other inadequacies in the adverse possession claim, the resort's use of the easement was not hostile.

Coffin also contends that Hollar's claim to the easement and contention that the fence encroaches on her property are barred due to the doctrine of laches. Laches is an equitable doctrine which may not be applied arbitrarily or in the absence of conformity with general principles of equity. *Lowry v. Lowry* (1992), Ind.App., 590 N.E.2d 612, 621. Laches is comprised of three elements: inexcusable delay in asserting a known right; an implied waiver arising from knowing acquiescence in existing conditions; and a change in circumstances causing prejudice to the adverse party. *Id.* "A mere lapse of time is insufficient; unreasonable delay which causes prejudice or injury is necessary." *Id.* quoting *LaPorte Prod. Credit Ass'n v. Kalwitz* (1991), Ind.App., 567 N.E.2d 1202, 1204.

Here, Hollar allowed Coffin's predecessors to use the easement so long as she was granted access to the resort property. When Coffin terminated her access, she asserted her right to the easement by filing

a lawsuit two or three months later. Additionally, Hollar complained about the location of the fence from the time Coffin began its construction. Hollar cannot be said to have slumbered on her rights.

There being no finding of error, the judgment in favor of Hollar is affirmed.

Affirmed.

GARRARD and MILLER, JJ., concur.