PANHANDLE EASTERN PIPE LINE
COMPANY, Appellant–Plain-
tiff/Counter–defendant,

v.

Earl Jackson TISHNER, Martha Germadine Tishner, Martha G. Loveall, Earlene Kay Brewster, and Elizabeth Irene Reasoner, Appellees–Defendants/Counter–plaintiffs.

No. 29A02–9707–CV–431.

Court of Appeals of Indiana.

Sept. 21, 1998.

Thomas A. Withrow, Sally B. Peacock, Debra A. Mastrian, Kerry L. Wagner, Henderson, Daily, Withrow & Devoe, Indianapolis, for Appellant–Plaintiff/Counter–defendant.

Peter L. Obremskey, Anthony W. Patterson, Parr Richey Obremskey & Morton, Lebanon, for Appellees–Defendants/Counter–plaintiffs.

## OPINION

KIRSCH, Judge.

Panhandle Eastern Pipe Line Company (Panhandle) appeals the judgment of the trial court partially denying its request for a permanent injunction and ordering it to pay damages to Earl Jackson Tishner, Martha Germadine Tishner, Martha G. Loveall, Earlene Kay Brewster, and Elizabeth Irene Reasoner (the Tishners). Panhandle presents numerous issue on appeal, which we consolidate and restate as follows:

I. Whether the trial court erred in determining that Panhandle's easement was partially extinguished by the Tishners' adverse possession.

II. Whether Panhandle owed a duty to the Tishners to prevent damage to improvements placed in proximity to its pipeline when it held an open easement for maintenance of a pipeline through the Tishners' property.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Panhandle, a natural gas company as defined by the Natural Gas Act of 1938, is a Delaware corporation with its principal place of business in Houston, Texas. Panhandle also maintains offices and conducts business in the State of Indiana and owns and operates a pipeline known as the "100 line," which travels through Hamilton County, Indiana. The 100 line is part of a pipeline system for the transportation of natural gas in interstate commerce from Texas to Michigan. As a natural gas company, Panhandle's operations are governed by the Federal Energy Regulatory Commission (FERC), the Natural Gas Pipe Line Safety Act, and regulations of the Department of Transportation relating to the location, construction, design, maintenance, operation, and safety of facilities and pipelines.

Earl and Martha Tishner live on real estate located in Hamilton County adjacent to State Road 38 South and own the property as life tenants. The remainder interest is held in fee simple absolute by the remaining named defendants. The Tishners have owned the property since 1956.

Panhandle is the present owner of an open easement of undefined width across the Tishners' property as successor in interest to an express right-of-way grant from Noblesville Milling Company to Indiana Gas Transmission Corporation, dated October 8, 1935, and recorded in the Office of the Recorder of Hamilton County, Indiana. The Tishners are successors in interest to the rights retained by Noblesville Milling Company under the terms of the easement. The easement provides, in relevant part, that Panhandle has the right to lay, maintain, operate, repair, replace, change the size of, and remove a pipeline. The Tishners are entitled to fully use and enjoy the premises except for the purpose granted to Panhandle. The grant further provides that the pipe be buried so as not to interfere with the cultivation of the land, and that the easement holder must pay for damages to crops and fences caused by the exercise of easement rights. After obtaining the easement, Panhandle's predecessor placed and maintained a 22″ pipeline through the property that the Tishners now own. This line was known as the 100 line.

The Tishners purchased the property in 1956 and built a house and driveway on it. In the early 1960's, the Tishners made further improvements to the property, including the installation of a swimming pool, a patio, a brick pool wall, a pool house, a stone wall entry into the pool area, and a brick entry wall. All of these structures are close to Panhandle's pipeline; most are within thirty-three feet of it. In addition, the Tishners planted several trees in proximity to the 100 line, and some directly over the 100 line.

In connection with its operation and maintenance procedures, Panhandle surveys the 100 line, including the portion that runs through the Tishners' property, by weekly aerial patrol and annual foot patrol to inspect the pipeline for evidence of leakage, the condition of the pipeline markers, water erosion, grading activities, and unusual conditions. Prior to 1988, Panhandle had entered the Tishners' property and completed its maintenance work without incident. Because Panhandle was able to work around the various improvements and trees without having to

remove them, Panhandle did not object to the Tishners' improvements.

In 1988, Panhandle discovered a shorted casing in the 100 line at State Road 38 adjacent to the Tishners' property. Repair of the casing was required by federal regulation and was scheduled to coincide with the replacement of the 100 line with a higher grade 22″ pipe. A Panhandle representative visited the Tishners and notified them about the work that had to be performed on the pipeline. He explained that the work would require the removal of the brick entry wall, one-half of the stone wing wall, a large maple tree and other trees and shrubs on the western border of the Tishners' property. Panhandle offered to rebuild the entry wall after the completion of the work, but Mr. Tishner refused. Several days later, Panhandle representatives again visited the Tishners to explain the project. Mr. Tishner ordered them off the property. The following day, when the construction crew arrived to begin the project, they found that Mr. Tishner had parked several vehicles over the 100 line, blocking the maple tree and the brick entry wall and Panhandle's access to its pipeline. As a result, Panhandle filed a motion for a temporary restraining order and application for preliminary and permanent injunction requesting that the Tishners be restrained from interfering with Panhandle's right to maintain its pipeline and be required to remove all obstructions to the line. The court issued the restraining order and the Tishners complied.

Replacement of the 100 line required Panhandle to remove the brick entry wall, several trees and shrubs, the stone entry wall to the pool area, and to tear up the asphalt on the Tishners' driveway. Panhandle had to excavate a trench several feet deep and wide across the Tishners' property. The side of the trench abutted the Tishners' pool house and was about thirteen feet from the Tishners' pool wall. Panhandle did not shore up or brace the ground next to the wall or inside the trench during this work. When Panhandle completed the project, it filled in the trench and reseeded the Tishners' lawn, but did not repair or replace any of the improvements or landscaping.

Several months after the completion of the project, Panhandle was required to increase the size of the 100 line from 22″ pipe to 36″ pipe. This work required a bigger trench than the previous project. Once again, the trenches were not shorn up. At the conclusion of this project, Panhandle offered to seed the lawn and replace the brick entry wall, but Mr. Tishner again refused.

About three years later, Mr. Tishner planted more trees in proximity to the 100 line. He also began construction on a brick entry wall, which when completed will duplicate the one removed for the first Panhandle project and will sit directly on top of the 100 line. In response, Panhandle sought and obtained another temporary restraining order to prevent the Tishners from doing anything further which would threaten the integrity of the 100 line or prevent Panhandle from exercising its easement rights. Panhandle then sought a permanent injunction against the Tishners. The Tishners filed a counterclaim for damages to their improvements caused by Panhandle's work on its easement.

At trial, Panhandle's witness testified that Panhandle needed an easement of only thirty-three feet on each side of the 100 line in order to maintain it. The Tishners introduced evidence of the damages to their improvements caused by Panhandle's work on the 100 line, including that their pool wall, benches, and patio were damaged such that they had to be replaced. Their expert testified that this work would cost $41,850. They also introduced evidence that their curb, driveway, front yard, and playground were damaged by Panhandle's work.

The trial court ordered Panhandle to pay damages to the Tishners for their pool wall, benches, patio, curb, driveway, front yard, and playground, ordered that the Tishners be allowed to erect and maintain any improvements on their property that existed prior to 1988, but ruled that they could not erect any additional structures within the area that Panhandle claims as an easement. Panhandle now appeals.

## DISCUSSION AND DECISION

Both Panhandle and the Tishners requested the trial court to enter findings of

fact and conclusions thereon. When a party has requested specific findings of fact and conclusions pursuant to Indiana Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, the reviewing court must determine whether the trial court's findings are sufficient to support the judgment. *Reese v. Reese*, 671 N.E.2d 187, 191 (Ind.Ct.App.1996), *trans. denied* (1997). In reviewing the judgment, this court must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Shafer v. Lambie*, 667 N.E.2d 226, 229 (Ind. Ct.App.1996). The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *Reese*, 671 N.E.2d at 191. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Shafer*, 667 N.E.2d at 229. To determine whether the findings or judgment are clearly erroneous, the court considers only the evidence most favorable to the judgment and all the reasonable inferences flowing therefrom, and it will not reweigh the evidence or assess witness credibility. *Skrzypczak v. State Farm Mutual Auto. Ins. Co.*, 668 N.E.2d 291, 293 (Ind.Ct.App.1996).

## I. Adverse possession

The first issue is whether the trial court erred in determining that Panhandle's easement was partially extinguished by the Tishners' adverse possession. The trial court found that the nature and extent of the easement was determined by the original grant, and that the parties' rights and obligations had not been enlarged or diminished in any way from the original easement grant. It also found that Panhandle was willing to restrict its open easement to thirty-three and one half feet on either side of its pipeline for inspection, immediate access to its pipelines in case of emergency, and for adequate work space for repair or replacement of its lines. It concluded, however, that Panhandle had lost its right to complain about the improvements in its easement made by the Tishners prior to 1988 through adverse possession and that the Tishners could therefore restore

their property to the condition it was in prior to 1988. Panhandle argues that this conclusion is error and that it has not lost any of its rights under the easement by adverse possession. We agree.

■ An easement may be extinguished by adverse possession. *See McKinney v. Lanning*, 139 Ind. 170, 175–76, 38 N.E. 601, 603 (1894); *but see Coffin v. Hollar*, 626 N.E.2d 586, 589 (Ind.Ct.App.1993) (questioning whether fee simple owner of servient estate can acquire title by adverse possession of easement over servient estate). Adverse possession is established by showing that the possession has been actual, visible, open and notorious, exclusive, under claim of ownership, hostile, and continuous for the statutory period. *Clark v. Aukerman*, 654 N.E.2d 1183, 1185 (Ind.Ct.App.1995); *Coffin*, 626 N.E.2d at 589. Each of the elements of adverse possession must be strictly proved by evidence that is clear, positive, and unequivocal. *Id.* at 297. An adverse claimant who establishes all of the requisite elements acquires title to the disputed land by operation of law and the original owner's title is therefore extinguished. *Clark*, 654 N.E.2d at 1185–86.

■ Here, the Tishners have not established that their use of Panhandle's easement was hostile. Possession is "hostile" if the party claiming adverse use does not disavow his or her right to possess the property or acknowledge that it is subservient to the title of the true owner. *Kline v. Kramer*, 179 Ind.App. 592, 598, 386 N.E.2d 982, 988 (1979). Panhandle continuously used its easement to perform inspections and patrols. When Panhandle first performed work on the 100 line in 1983, the Tishners cooperated fully. Panhandle next had to perform substantial work on the easement in 1988. It was at that time that the Tishners first objected to Panhandle's presence. The Tishners' hostile use began on the date when Panhandle requested access to the easement, and the Tishners refused. It was only at this time that the Tishners refused to acknowledge that their right to use the property in the easement was subservient to Panhandle's. After Panhandle received a temporary

restraining order prohibiting the Tishners from interfering with Panhandle's work, the Tishners did not attempt to exclude Panhandle from its easement. There was no sustained hostile use of the easement. The evidence is to the contrary.

 The Tishners have also failed to establish that their use of the easement was exclusive. The exclusivity requirement means that the party claims possession adversely to the exclusion of all others. *Herrell v. Casey,* 609 N.E.2d 1145, 1148 (Ind.Ct. App.1993). Possession is exclusive only if it is of such a nature that it operates as an ouster of the owner. *Davis v. Sponhauer,* 574 N.E.2d 292, 298 (Ind.Ct.App.1991), *trans. dismissed.* The trial court found that Panhandle's practice was to inspect the 100 line regularly and that it had inspected the section of its line that runs through the Tishners' property many times prior to 1988. Panhandle continuously used its pipeline easement, conducted several projects on the Tishners' property, performed aerial surveillance, conducted annual foot patrols, and on the occasions where the Tishners attempted to interfere with its access, vigorously protected its rights by seeking injunctive relief. At no time did the Tishners "oust" Panhandle from its easement. Thus, the trial court's finding of exclusivity is not supported by the evidence. To the extent that the trial court used the doctrine of adverse possession as the basis for its decision, it is unsupported by the evidence and is therefore error.

 Even if the Tishners had presented clear evidence of adverse possession of Panhandle's easement, such · a finding would not support the trial court's judgment. The trial court concluded that because of the Tishners' adverse possession of Panhandle's easement, any improvements they had made prior to 1988 could be reconstructed and maintained. However, the trial court recognized the continued vitality of Panhandle's easement by prohibiting the Tishners from making any further improvements on the easement. Adverse possession operates to extinguish title to land. *See Clark,* 654 N.E.2d at 1185–86. Therefore, had the Tishners· established adverse possession of Panhandle's easement, Panhandle's title to the easement would have been extinguished. There is no basis in law for concluding that the Tishners had adversely possessed the easement only with respect to the improvements they constructed near the pipeline.[1]

 Further, Panhandle's operation of the 100 line is governed by the Natural Gas Pipeline Safety Act, 49 U.S.C.App. § 1671 et seq., and the regulations promulgated thereunder, which set minimum federal safety standards for the design, installation, inspection, emergency procedures, testing, extension, construction, operation, replacement, and maintenance of pipeline facilities. This federal act completely preempts the field of pipeline safety. *National Fuel Gas Supply Corp. v. Public*

1. Panhandle argues that the trial court's decision may also rely on the concepts of waiver and acquiescence in finding that some of Panhandle's easement rights were extinguished. We do not read the use of these terms in the trial court's decision as providing separate, independent grounds, but rather, as used in its discussion of adverse possession. Nonetheless, neither doctrine provides a basis for the trial court's decision. Waiver is the intentional relinquishment of a known right. *Lafayette Car Wash, Inc. v. Boes,* 258 Ind. 498, 501, 282 N.E.2d 837, 839 (1972). It must be a voluntary act. *Egnatz v. Medical Protective Co.,* 581 N.E.2d 438, 441 (Ind.Ct.App. 1991). There is absolutely no evidence that Panhandle intentionally relinquished its easement rights. To the contrary, the evidence shows that Panhandle has continuously used its pipeline easement, and has vigorously protected its rights by seeking injunctive relief. There is no waiver here.

Acquiescence is the release or abandonment of one's rights that occurs when one stands by and sees another deal with one's property in a manner inconsistent with one's own rights without objection. *Henning v. Neisz,* 148 Ind.App. 576, 585, 268 N.E.2d 310, 316 (1971). Here, Panhandle did not acquiesce in the Tishners' use of its easement. Panhandle had a "good neighbor policy," under which existing improvements or encroachments were not contested until they obstructed necessary work. Pursuant to this policy, Panhandle did not ask the Tishners to remove any of their improvements in the easement until work on the pipeline made removal necessary. As such, for several years prior to the 1988 project, the Tishners' improvements on the easement were not inconsistent with Panhandle's ownership rights in the easement. Panhandle did not acquiesce in the Tishners' use of its easement.

*Serv. Comm'n,* 894 F.2d 571 (2d Cir.1990), *cert. denied* 497 U.S. 1004, 110 S.Ct. 3240, 111 L.Ed.2d 750 (1990); *ANR Pipeline Co. v. Iowa State Commerce Comm'n,* 828 F.2d 465 (8th Cir.1987). Thus, where common law rules of property are inconsistent with the congressional scheme set forth in the Act, the common law rules must give way, rendering any property use inconsistent with the Act subject to injunction. *Swango Homes, Inc. v. Columbia Gas Transmission Corp.,* 806 F.Supp. 180, 184 n. 2 (S.D.Ohio 1992). *See also McCartin McAuliffe Mechanical Contractor, Inc. v. Midwest Gas Storage, Inc.,* 685 N.E.2d 165, 170 (Ind.Ct. App.1997) (noting that when state regulation affects ability of FERC to regulate completely or brings about prospect of interference with federal regulatory power, state law may be preempted even if conflict is not inevitable). An easement which grants the right to operate a natural gas pipeline must, if the easement is not to be wholly illusory, imply the right to operate the pipeline in accordance with applicable federal law. *Swango Homes,* 806 F.Supp. at 185. Federal regulations require Panhandle to inspect the 100 line at regular intervals. Panhandle is also required to institute a plan to handle emergency situations, and to maintain the line according to government specifications. In this case, the Tishners' improvements prevent Panhandle from complying with federal law regarding the operation of the 100 line. The structures prevent inspections of the line, because of their proximity to it and the fact that at least one, the entry wall, is directly on top of the line. Further, in the event of a gas leak or other emergency, it would be imperative for Panhandle to act quickly to prevent injuries to persons or property. To allow structures of the type at issue here to be placed in such proximity to the pipeline would make it nearly impossible for Panhandle to establish a practical emergency plan, since Panhandle would have to make a separate plan depending on the type of structures found in its easement on each parcel of property. To ensure the safety of the Tishners and their neighbors, as well as Panhandle's ability to comply with federal regulations, Panhandle must have access to its 100 line. Panhandle retains all of its rights to its easement through the Tishners' property. *See Rees v. Panhandle Eastern Pipe Line Co.,* 452 N.E.2d 405, 410 (Ind.Ct. App.1983) (noting that pipeline easements were created to permit safe operation of natural gas pipelines).

## II. Duty

The next issue is whether Panhandle owed the Tishners a duty to take reasonable steps to protect the Tishners' improvements placed near its pipeline. The trial court awarded the Tishners damages for repair of their pool wall, patio, yard, curb, driveway, and playground.[2] The trial court found that in the course of Panhandle's 1988 and 1989 projects, it unreasonably failed to shore up or brace the trenches, causing damage to the Tishners' pool wall and patio.

■ In this case, the dimensions of Panhandle's easement are unclear. The terms of the grant establish only that Panhandle's easement is an open easement of undefined width across the Tishners' property. The easement of indeterminate width is not an easement across the entirety of the Tishners' property, rather, it is only an easement over the area reasonably necessary to carry out the purposes of the easement. A trial court may determine the extent of an easement of undefined width. *Rees,* 452 N.E.2d at 410. *See also Columbia Gas Transmission Corp. v. Savage,* 863 F.Supp. 198, 201 (M.D.Pa. 1994) (court construes undefined easement as fifty feet wide); *Columbia Gas Transmission Corp. v. Burke,* 768 F.Supp. 1167, 1172 (N.D.W.Va.1990) (same); *Columbia Gas Transmission Corp. v. Bennett,* 71 Ohio App.3d 307, 594 N.E.2d 1, 8 (1990) (same). At trial, Panhandle introduced evidence that an easement of sixty-six feet is sufficient for its purposes in maintaining and repairing the pipeline. *Record* at 500. The Tishners provided no evidence that this interpretation of the easement was unreasonable. Further,

---

**2.** On appeal, Panhandle only challenges the portion of the award for the Tishners' pool wall and patio.

this distance has received prior judicial approval for pipelines owned and operated by Panhandle in the same area. *See Rees,* 452 N.E.2d at 405; *Rees v. Panhandle Eastern Pipe Line Co.,* 176 Ind.App. 597, 377 N.E.2d 640 (1978). The trial court determined Panhandle's easement to be sixty-six feet in width, and Panhandle does not challenge this determination on appeal.

Panhandle's rights and duties within and without the easement must be distinguished. The owner of an easement (the dominant estate) possesses all rights necessarily incident to the enjoyment of the easement. *Litzelswope v. Mitchell,* 451 N.E.2d 366, 369 (Ind.Ct.App.1983). He may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. *Id.* The owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. *Holding v. Indiana & Michigan Elec. Co.,* 400 N.E.2d 1154, 1157 (Ind.Ct.App.1980). All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. *Id.* The owner of the servient estate may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. *Id.* Thus, within the easement, Panhandle has the right to enter upon the easement and to make repairs and replacements to its pipeline, including any necessary excavation, without regard to structures erected upon the easement, and the Tishners erected such structures at their peril. By the express terms of the easement grant, Panhandle is liable only for damages to crops and fences within its easement caused by its repair or replacement of its pipeline.

Outside the easement, however, Panhandle's duties are different. In *Spall v. Janota,* 406 N.E.2d 378 (Ind.Ct.App.1980), this court held that a landowner has an absolute right to have his land in its natural state laterally supported by the lands of adjoining landowners. If the adjoining landowner excavates on his land thereby depriving the lands of his neighbor of lateral support, the adjoining landowner is absolutely liable for such damage even if he is free from negligence. *Id.* at 381. Thus, Panhandle has the absolute duty to provide lateral support to the Tishners' land. There is, however, no such absolute right to lateral support of buildings. *Id.* Liability for damage to buildings resulting from the loss of lateral support must be based upon the negligence of the adjoining landowner in carrying on the activity which occasioned the loss of lateral support. *Id.* Thus, Panhandle has the duty to use reasonable care to avoid negligent removal of lateral support to structures erected on the land. *See also Wolf v. Forcum,* 130 Ind.App. 10, 17–18, 161 N.E.2d 175, 178 (1959).

In summary, Panhandle is not liable for damages to structures located within its easement, even if the structures were damaged by Panhandle's negligence. Panhandle is liable for removing lateral support to the land outside of the easement. Finally, Panhandle is liable, if negligent, for damage to structures outside its easement caused by its excavation within the easement.

Here, the trial court did not determine whether the Tishners' damaged structures were within or without the easement. The survey contained in the Record shows some within the easement, some without, and some overlapping the easement boundary. The placement of the structures is critical, as this is the basis for determining Panhandle's liability. We therefore reverse the judgment of the trial court and remand for a determination of the location of the structures with regard to the easement and for a determination of damages.

Reversed and remanded.

BAKER, J., concurs.

SULLIVAN, J., concurs in result at to Part I and concurs at to Part II.